570 F.2d 1120
 UNITED STATES of America
v.
John BAZZANO, Jr. a/k/a "Johnny", a/k/a "J", Joseph De Marco
a/k/a "Joe", Joseph Charles Yimin a/k/a "Bull", Charles
Patrickkellington a/k/a "Chuck", Francis Dattalo a/k/a
"Frank", a/k/a "Hog", Attilio Policastro a/k/a "Flat Top",
Primo Victory Mollico a/k/a "XG", John Franklin Matz a/k/a
"Jack", a/k/a "Mayor", David Rankin Guffey a/k/a "Chief",
a/k/a "Clairton Chief", John Regis Ward a/k/a "JP" a/k/a
"Ward", Peter Paul Orsini a/k/a "Pete", a/k/a "Pete Orsi",
Dominic Paul Serapiglia a/k/a Wilson Constable, Thomas C.
Poljak a/k/a "Eliz Chief", George B. Hines a/k/a "Eliz Constable".
Appeal of John BAZZANO, in No. 76-2584.
Appeal of David Rankin GUFFEY, in No. 76-2585.
Appeal of John Regis WARD, in No. 76-2586.
Appeal of Peter Paul ORSINI, in No. 76-2587.
Appeal of Thomas C. POLJAK, in No. 76-2588.
Appeal of John Franklin MATZ, in No. 76-2628.
 Nos. 76-2584 to 76-2588 and 76-2628.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 6, 1977.
Decided Dec. 21, 1977.
 
 Harold Gondelman, Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, Pa., for appellant Bazzano.
 John A. Knorr, Lewis & Stockey, Pittsburgh, Pa., for appellant Guffey.
 J. Cris Soich, Stokes, Lurie & Tracey, Pittsburgh, Pa., for appellants Ward and Orsini.
 Vincent C. Murovich, Murovich, Reale & Fossee, Pittsburgh, Pa., for appellant Poljak.
 Joseph J. Bonistalli, McCrady, Kreimer, Ravick & Bonistalli, Pittsburgh, Pa., for appellant Matz.
 Blair A. Griffith, U. S. Atty., and James E. Roark, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.
 Before ADAMS, VAN DUSEN and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 This appeal from judgments of conviction of six defendants raises two principal issues: (1) whether the district court erred in failing to grant a new trial because of prosecutorial misconduct in allowing the grand jury testimony of Government witness Moody to be read to Government witness Stanizzo and the grand jury testimony of Stanizzo to be read to Moody prior to trial, and (2) whether defendant Bazzano was denied the right to effective assistance of counsel with regard to sentencing because the district court failed to disclose published sentencing guidelines. After careful consideration, we have concluded that the contentions raised by the defendants do not justify reversal of the convictions.
 
 I.
 
 2
 The defendants were convicted of operating an illegal gambling business[1] or aiding and abetting the operation of an illegal gambling business,[2] and conspiring to obstruct state law enforcement relating to gambling.[3] The gambling business, a numbers game, was conducted in the towns of Clairton and Elizabeth, Pa. All the defendants who participated in the illegal gambling business, except Bazzano, were public officials.
 
 
 3
 The evidence adduced by the Government was voluminous and a brief summary of it will suffice. Basically, the evidence was of two types: adding machine tapes proven to be business records of the gambling operation, and testimony by a number of witnesses who had been involved in the gambling operation. The evidence established that Bazzano had run the gambling operation and that the other defendants accepted payments from the gambling operation in exchange for letting the operation continue without interference.
 
 
 4
 Mrs. Elizabeth Stanizzo, a former employee of the gambling operation, extensively detailed the illegal gambling business. Mrs. Stanizzo had known defendant Bazzano for 20 years, and her late husband had been Bazzano's partner in the business. She testified that Bazzano ran the gambling operation and that the other defendants received payments from the operation. Another witness, Moody, corroborated some of Mrs. Stanizzo's testimony. Moody, who for a time was part owner of the operation, testified that he had worked for Mr. Stanizzo in the business and that Mr. Stanizzo had dealt with Bazzano. A former Allegheny County detective, Hammer, testified that he had accepted protection payments from numbers writers in the Clairton area. His testimony also corroborated some of Mrs. Stanizzo's testimony.
 
 
 5
 Defendant Matz was the Mayor of Clairton. Testimony indicated that Matz allowed Bazzano to operate the numbers business in Clairton and that Matz received payment from one of Bazzano's employees. The adding machine tapes indicate that payments were made to "Mayor."
 
 
 6
 There was sufficient testimony to support the jury's verdicts convicting the other public official defendants as indicated in the footnote.[4]
 
 II.
 
 7
 The charge of prosecutorial misconduct stems from a meeting between two witnesses, Moody and Stanizzo, and F.B.I. Agent Fitzpatrick, who had investigated the case.
 
 
 8
 When Moody, who was testifying under immunity, took the stand, he requested to speak with the judge in chambers. In chambers, with counsel present, Moody stated that a few days before he was to testify, Fitzpatrick read Moody's grand jury testimony to Mrs. Stanizzo and read Mrs. Stanizzo's grand jury testimony to Moody. Defense counsel immediately moved for a mistrial or, in the alternative, that both Moody and Mrs. Stanizzo "be dismissed as witnesses and not called by the government" (N.T. IX-63). The court denied the motions after oral arguments and Moody was allowed to testify.
 
 
 9
 On cross-examination, defense counsel questioned Moody about the meeting with Fitzpatrick. He testified that Fitzpatrick read selected pages of each witness' grand jury testimony in the presence of both witnesses (N.T. IX-133). He also testified that, in his opinion, Fitzpatrick "doctored" Moody's testimony with Mrs. Stanizzo's so that their stories would be the same (N.T. IX-133-34).
 
 
 10
 Mrs. Stanizzo was also cross-examined on this subject, and her account differed from Moody's. She testified that Fitzpatrick did not read any of her grand jury testimony, but, rather, told her that he did not have to read it to her because she knew what she had said. She testified that he read from some papers to Moody in her presence.
 
 
 11
 After Mrs. Stanizzo's testimony, the defendants moved that her testimony be stricken on the ground that the meeting with Fitzpatrick violated F.R.Crim.P. 6(e) and constituted prosecutorial misconduct. Defendants also moved for a dismissal of the indictment on the same grounds. The motions were denied. The defendants again press this argument in this court, claiming that the conduct in violation of Rule 6(e) denied them a fair trial.
 
 
 12
 We hold that at least some of the conduct testified to was prosecutorial misconduct violative of Rule 6(e), but that this conduct did not constitute reversible error.
 
 F.R.Crim.P. 6(e) provides in part:
 
 13
 "Secrecy of Proceedings and Disclosure. Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule."[5]
 
 
 14
 The language pertinent here is: "Disclosure . . . may be made to attorneys for the government for use in the performance of their duties" and an "attorney . . . may disclose matters . . . only when so directed by the court . . . ." Thus, we are faced with two questions: Did the Government attorney use the material in the performance of his duties? Did the Government attorney disclose matters without court direction?
 
 
 15
 In answering the first question, we need not decide the issue of whether it is proper for material to be disclosed to an F.B.I. agent working for the Government attorney. The 1977 amendment to Rule 6(e) was enacted to permit such disclosure.[6] Assuming, arguendo, that such a disclosure was proper under the earlier version of Rule 6(e) applicable here,[7] the F.B.I. agent cannot use the disclosed material in a manner which is not permissible for the Government attorney. The scope of authority of the F.B.I. agent, acting as an agent for the Government attorney, is limited to the scope of authority of the Government attorney. Cf. Restatement of Agency, 2d, § 20. Apparently, in this case, if Moody's testimony was accurate, the Assistant United States Attorney, perhaps knowingly, used the F.B.I. agent as a conduit to disclose the grand jury testimony of two of the Government witnesses to each other prior to trial.
 
 
 16
 The defendants do not object to the disclosure by the agent to a grand jury witness of that witness' testimony,[8] but the objection is to the verbatim disclosure of Mrs. Stanizzo's testimony to Moody, and vice versa, in an attempt to "shape" their trial testimony so that each witness' testimony will corroborate the other's. These facts are distinguishable from a pre-trial interview in which the prosecutor indicates to a witness in general terms the evidence which other witnesses may give. In this latter situation, the interview may be conducted without disclosure of specific statements made to the grand jury, and therefore Rule 6(e) would not be involved. Furthermore, when potential trial witnesses who testified before the grand jury are not identified by name, there is no violation of the purpose of Rule 6(e) to encourage witnesses to testify without fear of retaliation. See, e. g., Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); Posey v. United States, 416 F.2d 545, 557 (5th Cir. 1969), cert. denied, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970). Finally, such a pre-trial interview may simply serve to refresh a witness' memory rather than improperly to influence his testimony. As the Supreme Court has stated, "an attorney must respect the important ethical distinction between discussing testimony and seeking improperly to influence it." Geders v. United States, 425 U.S. 80, 90 n.3, 96 S.Ct. 1330, 1336, 47 L.Ed.2d 592 (1976). Of course, at times the line between refreshing a witness' memory and seeking improperly to influence his testimony may be difficult to draw, and each case must be decided on its facts. We merely hold that on the particular facts of this case, if the agent read Moody's testimony verbatim to Mrs. Stanizzo in an attempt to "shape" Mrs. Stanizzo's trial testimony to coincide with Moody's, the agent's conduct fell on the impermissible side of the line. Therefore, on Moody's account, the Government attorney's use of grand jury material went beyond the proper use of that material in the performance of his duties.[9]
 
 
 17
 With regard to the second question (1127 above), through the F.B.I. agent, the Government attorney disclosed grand jury testimony without court direction, if Moody's testimony was accurate. Therefore, the Government attorney, perhaps unknowingly, violated Rule 6(e). However, as noted below, there were credibility difficulties with Moody's testimony. Although we find the violation of Rule 6(e) as testified to by Moody improper, we do not think the defendants were denied a fair trial under the facts presented by this record.
 
 
 18
 First, Moody's and Mrs. Stanizzo's accounts of what occurred at the meeting with Fitzpatrick differed: Moody claimed that Fitzpatrick attempted to "doctor" the testimony and read each witness' testimony to the other witness. Mrs. Stanizzo testified that Fitzpatrick merely read from some papers, presumably a portion of Moody's testimony,9a to Moody in her presence, but made no attempt to coach her or to tell her what to say. Of course, even given Mrs. Stanizzo's version of the conduct if the papers read were grand jury transcripts, the conduct violates Rule 6(e), but on this version the conduct is not as egregious as the misconduct alleged by Moody. The trial judge could have believed Mrs. Stanizzo's account rather than Moody's, and we cannot say his decision to believe her account was erroneous. There is evidence in the record that Moody, who was being forced to testify under immunity, did not want to testify and was using this incident as a convenient way to avoid testifying and to avoid implicating his friends.[10] Throughout his testimony he exhibited a hostility toward the Government. N.T. IX-67, 109, 123. Consequently there is reason to be suspicious of the accuracy of Moody's account of the meeting and to accept Mrs. Stanizzo's account, as the fact finder could conclude that she was a more disinterested witness.
 
 
 19
 Secondly, the trial judge found that the witnesses' testimony "varied in a number of respects, and all the circumstances militate against any inference that the testimony of Moody and Mrs. Stanizzo was 'shaped' . . . ." United States v. Bazzano, Crim.No. 75-192, slip op. at 8-9 (W.D.Pa., Nov. 9, 1976). Having carefully reviewed the record, we find ample support for this position. Thus, the trial judge was acting well within his discretion in allowing these witnesses to testify.
 
 
 20
 Third, because there is ample evidence to support the view that any attempt to shape the witnesses' testimony was unsuccessful, we think the evidence of improper influence affects the credibility, not the admissibility, of the testimony, see Geders v. United States, 425 U.S. 80, 89-90, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); United States v. Hood, 493 F.2d 677, 680 (9th Cir.), cert. denied, 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 84 (1974), and, of course, the credibility of witnesses is a question for the jury. See, e. g., United States v. Hill, 449 F.2d 743, 743 n.3 (3d Cir. 1971). Moody, Mrs. Stanizzo, and Fitzpatrick were cross-examined vigorously about the meeting at which the grand jury testimony was read by Fitzpatrick. Therefore, the jury was fully apprised of all three accounts and was able to weigh the credibility of Mrs. Stanizzo accordingly.[11] As the Supreme Court has stated: "The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury." Hoffa v. United States, 385 U.S. 293, 311, 87 S.Ct. 408, 418, 17 L.Ed.2d 374 (1966).[12]
 
 
 21
 Finally, even assuming that Mrs. Stanizzo's testimony was tainted by improper influence, her testimony was still not sufficiently harmful to require reversal. The only defendant who attempts to show that he was prejudiced by Mrs. Stanizzo's testimony is Matz, who claims that he was implicated by her trial testimony but was not implicated by her grand jury testimony. Even if Mrs. Stanizzo's testimony regarding Matz had been stricken, there would have been sufficient evidence to convict Matz because the tapes indicated that he received bribes and there was ample evidence that whenever the tapes indicated that a person received bribes, that person did receive bribes. Therefore, even if it had been error to admit Mrs. Stanizzo's testimony regarding Matz, it would have been harmless error beyond a reasonable doubt.[13]
 
 
 22
 We emphasize that our holding that the prosecutorial misconduct in violation of Rule 6(e) does not require a new trial is limited to the facts of this case. Under other circumstances, for example, when a witness appears to have changed his or her testimony as the result of some improper influence or when the evidence against the defendants is not as strong as it is here, a violation of Rule 6(e) may well require a new trial.
 
 III.
 
 23
 Defendant Bazzano contends that the district court denied him effective assistance of counsel during sentencing because the trial judge referred to published sentencing guidelines but failed to provide those guidelines to defense counsel or to make them part of the record. We find this argument unpersuasive.
 
 
 24
 Counsel did not request to see the sentencing guidelines or to have them made part of the record at the time of sentencing. Nor did Bazzano raise the issue of ineffective assistance of counsel in his post-trial motions. This court will not pass on issues not raised in the district court "unless the error be so fundamental in nature as to deprive a party of fundamental justice." United States v. Moore, 453 F.2d 601, 604 (3d Cir. 1971).[14]
 
 
 25
 We do not think failure to disclose the sentencing guidelines deprived Bazzano of fundamental justice. Bazzano was sentenced to seven years' imprisonment and fined $40,000. The maximum sentence possible was 35 years' imprisonment and $140,000. in fines.[15] Therefore, the sentence was well within the statutory maximum. See United States v. Fessler, 453 F.2d 953, 954 (3d Cir. 1972). Moreover, the guidelines referred to by the trial judge, entitled Part 2 Parole, Release, Supervision and Recommitment of Prisoners, Youth Offenders and Juvenile Delinquents, are published at 28 C.F.R. §§ 2.1-2.58, and often cited by this court. see, e. g., united states v. somers,552 F.2d 108 (3d Cir. 1977); United States v. Salerno (appeal of Silverman),538 F.2d 1005 (3d Cir. 1976).[16] Since the guidelines should be familiar to anyone practicing criminal law in this Circuit and since they have been published in the Code of Federal Regulations, they were readily available to defense counsel.
 
 IV.
 
 26
 We have considered these other contentions of one or more defendants and reject them:
 
 
 27
 A. Where it is established that the prosecutor failed to furnish exculpatory statements of many witnesses who were called to testify, the district court should have conducted a hearing and required the production of statements and grand jury testimony of other witnesses whom the Government did not call to testify to determine whether additional exculpatory evidence or evidence which would tend to negate the guilt of defendant had been withheld from counsel for defendant as alleged in the motion for new trial.[17]
 
 
 28
 B. The district court erred in failing to instruct the jury that certain witnesses are available to the Government where the Government may grant them immunity but not available to the defendant and, therefore, the inference that their testimony would be adverse to the Government is a permissible one which the jury may draw.[18]
 
 
 29
 C. The district court erred in failing to grant a hearing at which the grand jury testimony of the F.B.I. agent would be introduced to show that the indictment was returned on hearsay rather than on substantive testimony of witnesses.[19]
 
 
 30
 D. The evidence is not sufficient to sustain the verdict and the court should have granted defendants' motion for judgment of acquittal.[20]
 
 
 31
 E. The court erred in admitting into evidence the adding machine tapes which (1) consisted of inadmissible hearsay statements, and (2) denied the defendant his constitutional right to confront and cross-examine witnesses against him.[21]
 
 
 32
 The defendants make several other contentions which, after consideration, we also reject.[22]
 
 
 33
 The judgments of the district court will be affirmed.
 
 
 34
 ADAMS, Circuit Judge, concurring.
 
 
 35
 I concur with the result reached by the majority in this case. However, I am constrained to add some thoughts concerning Bazzano's contention as to the sentence imposed on him, and the judge's alleged failure to explain the basis of that sentence.
 
 I.
 
 36
 The key facts bearing upon Bazzano's sentencing may be quickly summarized. With respect to all counts on which he was convicted, Bazzano received a sentence of seven years in prison and a fine of $40,000. After the penalty was imposed, the trial judge stated that Bazzano's sentence was predicated upon the "guidelines that have recently been published."[1]
 
 
 37
 At oral argument Bazzano's counsel remarked that he was not aware of the identity of the guidelines to which the judge referred. After further questioning by the panel, however, counsel admitted that he had not pressed the trial judge for any additional explanation of the basis for the sentence.
 
 
 38
 Two points are evident in light of these facts. First, this is not a case in which the district judge gave no reasons for Bazzano's sentence. Although the grounds for the sentencing decision were not set forth in detail, it cannot be claimed that the judge made no attempt to explain the matters influencing him.
 
 
 39
 Additionally, there is no indication that Bazzano was foreclosed from requesting a further explanation by the court. Since Bazzano's counsel apparently was unaware of the nature of the guidelines to which the judge referred, it is rather puzzling that he did not seek some additional elaboration of the basis for the decision.
 
 
 40
 In light of these factors, Bazzano's argument that he was deprived of the effective assistance of counsel, because the attorney was unable to discover the grounds of the penalty,[2] cannot succeed. The facts simply do not support the major premise of such a position, namely, that counsel had no opportunity to learn the reasons for the sentencing determination.
 
 
 41
 Nonetheless, this does not end the matter. Although this Court was not asked by the parties to adopt a rule that the reasons for sentences should be given in all cases, in my view, the procedural requirement of a statement of reasons should be adopted for future cases.
 
 II.
 
 42
 The traditional principle guiding appellate courts faced with challenges to sentences, in this Circuit and elsewhere, is to defer to the discretion of a trial court.[3] As a general rule, "a federal appellate tribunal will not review a judgment of sentence that is within the statutory maximum unless there be a showing of illegality or abuse of discretion."[4] The rationale behind this precept is that trial judges, by virtue of their knowledge of the circumstances of a criminal case, are in the best position to impose a penalty, taking into account the individual conditions of the defendant[5] and the nature of his crime.[6]
 
 
 43
 Yet the principle of deferring to the discretion of a trial court clearly does not require abdication of an appellate court's responsibility to superintend the sentencing process. Moreover, respect for a district court's discretion in framing the substance of sentences within statutory limits entails no lack of power to review sentencing procedures. Indeed, "the careful scrutiny of the judicial process by which the particular punishment was determined" is "a necessary incident of what has always been appropriate appellate review of criminal cases."[7]
 
 
 44
 a.
 
 
 45
 In the course of reviewing the process of sentencing, the Supreme Court in United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), held that it was proper to remand the case for reconsideration of a sentence when the district judge explicitly took into account the defendant's record of prior convictions, and it later was determined that two of the convictions were constitutionally invalid. The Supreme Court was able to conclude, by reviewing the transcript of the sentencing proceeding, that constitutionally impermissible convictions had been weighed by the trial court.[8] As the Supreme Court noted:
 
 
 46
 The record in the present case makes evident that the sentencing judge gave specific consideration to the respondent's previous convictions before imposing sentence upon him. Yet it is now clear that two of those convictions were wholly unconstitutional under Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.[9]
 
 
 47
 The Supreme Court further emphasized that Tucker's sentence might have been different had the district judge not taken into account the invalid data.[10]
 
 
 48
 Thus, Tucker stands for the proposition that a district judge, in the exercise of his discretion, must not rely upon incorrect evidence of prior convictions or upon previous convictions illegally obtained.[11] The principle underlying this proposition, stated generally, appears to be that it is unfair for a person to suffer a penalty which, at least to a significant degree, was designed to fit a set of facts that is inapplicable to the individual on whom the sentence is imposed.
 
 
 49
 b.
 
 
 50
 In some cases, such as in Tucker itself, a reviewing court may be able to conclude, simply on the basis of the record, that a trial judge relied upon specific misinformation about the defendant.[12] It is not difficult to foresee, however, that the record of a case will not always reveal clearly whether a sentencing tribunal took into consideration erroneous data.[13] Where the record is silent or unclear on the matter, such a gap could be filled by a statement of the reasons for the sentence. At the very least, then, the procedural requirement of a statement of reasons for sentences would assist appellate courts in such circumstances in carrying out the mandate of Tucker.
 
 
 51
 Moreover, the requirement of a statement of reasons would appear to intrude less on the discretion of a trial court than a process of inferring broadly what a judge's reasoning regarding a sentence might have been. When no statement of reasons is set out, an appellate court, in order to vindicate the principle that only correct information may be considered in sentencing, is forced to draw inferences from the record about the district judge's views.[14] However, if a frank statement were made by the trial judge regarding the basis of a sentence, a reviewing court could concentrate on such an explicit enunciation of the factors on which the judge relied. This is not to say that, in all cases in which an appellate court questions the veracity of the information considered in sentencing, confining review solely to the statement of a trial judge would be adequate. Nevertheless, it seems reasonable that in the normal case it would suffice.
 
 
 52
 Some appellate tribunals have demanded that a district court articulate the basis of its sentence when it is ordered to resentence a defendant.[15] United States v. Latimer[16] is a good example of a situation in which the most direct response by an appellate court, when it questions whether a sentence depended upon invalid information, is to require the trial court to state its reasons.
 
 
 53
 In Latimer, the defendant was convicted of impeding with a deadly weapon F.B.I. agents from performing their duties. The government, in its brief on appeal, referred to knowledge by the district court of tests performed on a bullet found in a gun held by the defendant at the time of his misconduct, which indicated that the gun had misfired.[17] The appellate court stressed that such information would seem to indicate that the defendant might have pulled the trigger while pointing the gun at the F.B.I. agents, and that this would be a more serious crime than the one for which the defendant was charged and sentenced. The government's brief thus raised "the possibility that the district court may have sentenced Latimer for a more serious offense than the one for which he was convicted . . . ."[18] Since there was no way to be certain that this did not occur, the appellate court vacated the sentence and remanded the case with instructions that the district court file a statement of the reasons for the penalty ultimately imposed.[19]
 
 III.
 
 54
 The justification for requiring a statement of reasons for sentences is not confined to situations where, on appeal, there is a serious question concerning the validity of the basis of a sentence.[20] If the need fully to review the accuracy of the information utilized in sentencing were the central support for a statement of reasons, then all that would be indicated, when the grounds of a sentence are in doubt, would be a direction that the trial judge upon remand articulate the reasons.
 
 
 55
 Although the value of such a requirement seems plain, a broader change would also seem to be in order. The rationality and fairness of the sentencing process, and the likelihood that a given sentence will contribute to the promotion of the aims of our system of criminal justice, would be measurably heightened by requiring federal judges generally to give the reasons for the penalties they impose.[21]
 
 
 56
 a.
 
 
 57
 There are several policy justifications for the requirement that a trial judge elaborate the factors influencing a particular sentence. First, it would help to assure that the sentence fits the circumstances of a given defendant. For if a judge must elaborate the grounds of a sentencing determination, his attention will necessarily focus on the particular aspects of a case that are apposite to punishment.[22] "A Sphinx-like silence on the court's part precludes anyone (including the parties, the judge and an appellate tribunal) from learning whether he acted in error." United States v. Brown, 479 F.2d 1170, 1172 (2d Cir. 1973); accord, United States v. Velazquez, 482 F.2d 139, 142 (2d Cir. 1973).
 
 
 58
 Moreover, such a requisite would help to guarantee that the basis of a sentence is fundamentally rational and objective, and not rooted in nonarticulable considerations.[23] Although any sentencing decision may rest in part on a sense of the case and of the defendant that will be difficult to state with clarity, and although some aspects of the decision may be founded on ineffable factors, it should ultimately be grounded upon concrete and identifiable items revealed in the course of the trial and the sentencing proceeding.[24] Insisting on a statement of reasons ". . . would encourage the judge to clarify and justify, in his own mind, the grounds for the sentence he chooses. As a result, sentencing decisions would tend, on the whole, to be more carefully thought out." United States v. Velazquez, 482 F.2d 139, 142 (2d Cir. 1973).
 
 
 59
 As Judge Wyzanski wrote twenty-five years ago on the question whether a judge should give the reasons for his sentence:
 
 
 60
 Eminent and wise judges have warned me against this. Our judgment, they say, is better than our reasons. And it is in vain to attempt to explain the exact proportions attributable to our interest in punishment, retribution, reform, deterrence, even vengeance. But are these arguments valid? For there is grave danger that a sentencing judge will allow his emotion or other transient factors to sway him. The strongest safeguard is for him to act only after formulating a statement of the considerations which he allows himself to take into account.[25]
 
 
 61
 The requirement of a statement of reasons for a sentence would also reinforce the dignity of the accused, who thereby would be treated as a subject worthy of an explanation for a decision by a representative of the state so poignantly affecting him and his family. Such action by the sentencing judge in many cases could be of therapeutic worth to a defendant. See Dorszynski v. United States, 418 U.S. 424, 456, 94 S.Ct. 3042, 41, L.Ed.2d 855 (1974) (Marshall, J., concurring in judgment).[26] Moreover, such an explanation could have great value for correctional authorities when, as is often the case, a sentence results in commitment or continued supervision of a defendant.[27]
 
 
 62
 In addition, requiring a sentencing tribunal to articulate the basis for its determination and, where appropriate, affording a defendant an opportunity to learn the reasons for the extent of his punishment, would increase the sense of the defendant and the public generally that the criminal process is fair and legitimate. More and more, we are coming to realize that for our system of criminal justice to be respected by the participants in it as well as by the public, it must be observed to be fair. It is not enough for it to be technically correct, although that, too, is a fundamental aim. Requiring that the basis of a sentence be set forth by a trial judge would promote the principle that "to perform its high function in the best way 'justice must satisfy the appearance of justice' ".[28]
 
 
 63
 The reality of justice would also be enhanced by such a step. From a defendant's perspective, the requirement of a statement of reasons would reduce the potential for unbridled discretion on the part of a judge in a situation in which the liberty of an accused is directly at stake.[29] From the public's viewpoint, this requirement would aid the citizenry in becoming better informed about the use of judicial power in criminal cases and, in particular, about the nature and grounds of the penalties imposed in the public's name.[30]
 
 
 64
 b.
 
 
 65
 The major arguments adduced for rejecting the requirement of a statement of reasons for sentences are, at least to me, unconvincing. First, it is difficult to see that such a rule would be an undue burden on trial courts, for, as Justice Marshall has stated, "it is not burdensome to give reasons when reasons exist."[31]
 
 
 66
 In addition, the tradition of deferring to the discretion of trial courts is not a sufficient basis for failing to effectuate a change in sentencing policy.[32] Indeed, to warrant adherence to present practices, there should be proffered an independent justification for them, especially since it has become increasingly clear that a requirement for a statement of reasons would maximize the achievement of fundamental purposes in our criminal justice system.[33] Further, we have uncovered no data showing that the range of a trial court's discretion would be unduly constrained by asking a judge to elaborate the reasons for his sentencing determinations.
 
 
 67
 Another argument sometimes advanced for not imposing such a procedural requirement is that sentences cannot be "explained" in an orderly manner because the decisional processes leading to them are not structured.[34] The major difficulty with this position, putting aside the point that it apparently rests on an unsupported psychological premise, is that it proves too much. Surely many complex decisions in the judicial process have at their base some nonarticulable factors. But this point alone is not a sufficient justification to forego the attempt to make and to support major choices in a careful, rational manner.
 
 
 68
 c.
 
 
 69
 To fail to insist that trial judges present the reasons for sentences is in effect to ignore the existence of unevenness in present practices. Since courts have displayed great sensitivity to the procedural rights of defendants during other stages of the criminal process, the act of sentencing itself is in the rather unique position of relative freedom from procedural scrutiny.[35] This is especially disconcerting because, in our criminal justice system, guilty pleas have become the norm.[36] Since more than 80% of all criminal cases involve no judicial determination of guilt,[37] from a practical perspective sentencing decisions may well be the most important ones made by trial judges in criminal cases. In such a system, it is particularly incongruous to fail to accord to a defendant at sentencing the kind of procedural protections provided at other stages of the criminal process.[38]
 
 
 70
 A further anomaly exists in this Circuit, where Pennsylvania and New Jersey require trial judges to give reasons for sentences while the federal courts do not.[39] Although this alone is, of course, an insufficient ground for imposing the requirement on district courts, it should not be overlooked. Particularly when the policy arguments tend to point in one direction, it is important to consider the value of having a procedural system in which the federal courts do not diverge increasingly and substantially from state courts in the safeguards afforded defendants.[40]
 
 
 71
 To persist in declining to require that district judges provide reasons for sentences is also to overlook a growing body of legal literature representative of judges, lawyers, scholars, and other commentators on the criminal process affirming the merit of such a procedure.[41] For instance, as the American Bar Association Project on Minimum Standards for Criminal Justice recommended nearly a decade ago:
 
 
 72
 The sentencing judge should be required in every case to state his reasons for selecting the particular sentence imposed. Normally, this should be done for the record in the presence of the defendant at the time of sentence. In cases in which the sentencing judge deems it in the interest of the defendant not to state fully the reasons for the sentence in the presence of the defendant, he should prepare such a statement for transmission to the reviewing court as a part of the record.[42]
 
 IV.
 
 73
 In view of these considerations, the time is now ripe to require, on the basis of our supervisory power over district courts in this Circuit,[43] that trial judges set forth the reasons for the sentences they impose.[44] Such a rule would help to assure that sentences are grounded on the facts of a particular case, and would serve the broader aims of promoting the defendant's rehabilitation as well as the fairness and rationality of sentencing procedures. It would also eliminate the undue delay that frequently results when the sentencing process is questioned in an appellate court, and the trial judge has not given his reasons for the sentence.[45] These gains would obtain without overly burdening trial judges, and without invading the realm of their discretion to set sentences on the basis of their knowledge of the defendant and the circumstances surrounding the crime.
 
 
 
 [1]
 18 U.S.C. § 1955 provides in pertinent part:
 "Prohibition of illegal gambling businesses
 "(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.
 "(b) As used in this section
 (1) 'illegal gambling business' means a gambling business which
 (i) is a violation of the law of a State or political subdivision in which it is conducted;
 (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
 (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
 "(2) 'gambling' includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein."
 
 
 [2]
 18 U.S.C. § 2(a) provides:
 "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."
 
 
 [3]
 18 U.S.C. § 1511 provides in pertinent part:
 "Obstruction of State or local law enforcement
 "(a) It shall be unlawful for two or more persons to conspire to obstruct the enforcement of the criminal laws of a State or political subdivision thereof, with the intent to facilitate an illegal gambling business if
 "(1) one or more of such persons does any act to effect the object of such a conspiracy;
 "(2) one or more of such persons is an official or employee, elected, appointed, or otherwise, of such State or political subdivision; and
 "(3) one or more of such persons conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business.
 "(b) As used in this section
 "(1) 'illegal gambling business' means a gambling business which
 (i) is a violation of the law of a State or political subdivision in which it is conducted;
 (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
 (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
 "(2) 'gambling' includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels, or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.
 "(d) Whoever violates this section shall be punished by a fine of not more than $20,000 or imprisonment for not more than five years, or both."
 
 
 [4]
 Defendant Guffey was the Chief of Police of Clairton. While he held this office, no gambling arrests were made in Clairton. The tapes indicated that protection payments were made to "Chief Clairton."
 Defendant Poljak was the Chief of Police of Elizabeth. There was testimony that the people operating the gambling business made payments to Poljak. The tapes indicated that payments were made to "Elizabeth Chief" and "Elizabeth Constable."
 Defendant Ward was the Justice of the Peace of Clairton. The tapes indicated that payments were made to "Ward" and to "J. P." Testimony established that "J. P." referred to the Justice of the Peace of Clairton.
 Defendant Peter Orsini was a Constable in Clairton. The tapes indicated that protection payments were made to "Pete," "Pete Orsini," and "Pete Orsi." Testimony established that one of the operators of the gambling operation directed an assistant to give an envelope to Orsini. He accepted it without comment.
 
 
 [5]
 Rule 6(e) was amended on July 30, 1977, to read, in part, as follows:
 "Secrecy of Proceedings and Disclosure.
 "(1) General Rule. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the Government, or any person to whom disclosure is made under paragraph 2(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of rule 6 may be punished as a contempt of court.
 "(2) Exceptions.
 "(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grant juror, may be made to
 (i) an attorney for the government for use in the performance of such attorney's duty; and
 (ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce Federal criminal law.
 "(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce Federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made.
 "(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made
 (i) When so directed by a court preliminarily to or in connection with a judicial proceeding; or
 (ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."
 Pub.L.No.95-78, 91 Stat. 319 (1977).
 Of course, for purposes of this appeal, we must apply the rule as it existed at the time of trial and at the time the misconduct occurred.
 
 
 [6]
 See note 5, supra. See (1977) U.S.Code Cong. & Admin.News, pp. 527-536, for the legislative history of the amendment
 
 
 [7]
 Neither party cites, nor does our research disclose, any decision under the original version of Rule 6(e) directly addressing the question of the propriety of disclosure of grand jury material by a United States Attorney to personnel of another Government agency helping him prepare for trial. The courts, however, have generally permitted disclosure to such personnel when they are assisting the United States Attorney in conducting a grand jury investigation and working under his supervision. See, Coson v. United States, 533 F.2d 1119, 1120-21 (9th Cir. 1976); United States v. Evans, 526 F.2d 701, 707 (5th Cir.), cert. denied, 429 U.S. 818, 97 S.Ct. 62, 50 L.Ed.2d 78 (1976); United States v. Hoffa, 349 F.2d 20, 43 (6th Cir. 1965), aff'd, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); In re William H. Pflaumer & Sons, Inc., 53 F.R.D. 464, 475-77 (E.D.Pa.1971); United States v. Zirpolo, 288 F.Supp. 993, 1015 (D.N.J.1968), rev'd on other grounds, 450 F.2d 424 (3d Cir. 1970). The Eighth Circuit has required an order prior to disclosure even in these circumstances. United States v. Universal Mfg. Co., 525 F.2d 808, 812-13 (8th Cir. 1975). The Third Circuit has held that it is improper to disclose grand jury material to another federal agency for use by that agency in civil proceedings to enforce an administrative order. In re Grand Jury Proceedings, 309 F.2d 440, 444 (3d Cir. 1962)
 
 
 [8]
 The decided cases which we have found on this point approve the disclosure, prior to trial, to a witness of his grand jury testimony. United States v. Heinze, 361 F.Supp. 46, 57 (D.Del.1973); King v. Jones, 319 F.Supp. 653, 657 (N.D.Ohio 1970); United States v. American Radiator & Standard Sanitary Corp., 45 F.R.D. 477 (W.D.Pa.1968). See Bursey v. United States, 466 F.2d 1059, 1081 (9th Cir. 1972); United States v. Rosen, 353 F.2d 523, 524 (2d Cir. 1965); In re Russo, 53 F.R.D. 564, 10 Crim.L.Rep. 2145, 2147 (C.D.Cal.1971)
 
 
 [9]
 We think the Code of Professional Responsibility and the ABA Standards Relating to the Prosecution Function are relevant to a prosecutor's duty in this context. Ethical Consideration 7-13 of the Code of Professional Responsibility states: "The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict." The commentary to the ABA Standards Relating to the Prosecution Function, Standard 1.1 at 45, states: "Although the prosecutor operates within the adversary system, it is fundamental that his obligation is to protect the innocent as well as to convict the guilty, to guard the rights of the accused as well as to enforce the rights of the public."
 In United States v. Crutchley, 502 F.2d 1195 (3d Cir. 1974), which held that if the Government transcribes the grand jury testimony of any witness it must transcribe the testimony of all such witnesses, this court recognized the importance of preventing the grand jury system from being used in a way that puts the defense in an unequal position at trial. See Crutchley, supra at 1200. However, no restraint was placed on the cross-examination of Moody, Mrs. Stanizzo and Fitzpatrick (see, for example, N.T. X-45, etc.). See page 1127, below.
 9a Fitzpatrick testified that he "went over" Moody's testimony with him in Mrs. Stanizzo's presence and "went over" Mrs. Stanizzo's testimony with her in Moody's presence. N.T. X-45.
 
 
 [10]
 The following are excerpts from Moody's discussion in chambers and testimony:
 "Your Honor, I don't want to get on the stand and testify." N.T. IX-57.
 "I didn't want immunity."
 Question (by Assistant U.S. Attorney): "Were you granted immunity?"
 A: "Yes, against my rights."
 Q: "And you were ordered to testify?"
 A: "Yes, I was ordered to, either that or go to jail for 18 months." N.T. IX-66.
 "I am not here of my own free will." N.T. IX-68.
 "I will go to jail before I put any of these guys (the defendants) in jail." N.T. IX-141.
 
 
 [11]
 Geders, supra, concerned the possibility of the "coaching" of a defendant by a defense counsel when the defendant testified in his own behalf. We think that the principles announced by the Court in that context are applicable here, where the issue concerns the possibility of improperly influencing a Government witness. The Court stated:
 "The opposing counsel in the adversary system is not without weapons to cope with 'coached' witnesses. A prosecutor may cross-examine a defendant as to the extent of any 'coaching' during a recess, subject, of course, to the control of the court. Skillful cross-examination could develop a record which the prosecutor in closing argument might well exploit by raising questions as to the defendant's credibility, if it developed that defense counsel had in fact coached the witness as to how to respond on the remaining direct examination and on cross-examination."
 Id. at 89-90, 96 S.Ct. at 1336.
 In United States v. Hood, 493 F.2d 677, 680 (9th Cir. 1974), the court held that where there was evidence that police officers testifying for the Government had fabricated their testimony, it was a function of the trier of fact to determine the credibility of these witnesses.
 
 
 [12]
 See also United States v. Henderson, 422 F.2d 454, 456 (9th Cir. 1970) ("Where . . . the trial court allows the defendant broad latitude to probe the informant's background and motives by cross-examination, the question is one of credibility to be determined by the trier of fact."); Bush v. United States, 126 U.S.App.D.C. 174, 176, 375 F.2d 602, 604 (1967)
 
 
 [13]
 F.R.Crim.P. 52(a) provides: "Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." See United States v. Baily, 164 U.S.App.D.C. 310, 313, 505 F.2d 417, 420 (1974), cert. denied, 420 U.S. 961, 95 S.Ct. 1350, 43 L.Ed.2d 438 (1975) (no harm caused by court's acceptance of evidence without preliminary ruling on admissibility when the evidence against the defendants was otherwise overwhelming)
 
 
 [14]
 See also United States v. Dansker, 537 F.2d 40, 64 (3d Cir. 1976); United States v. Provenzano, 334 F.2d 678, 690 (3d Cir. 1964). F.R.Crim.P. 52(b) states: "Plain error or defects affecting substantial rights may be noted although they were not brought to the attention of the court."
 
 
 [15]
 Bazzano was convicted of one count of violating 18 U.S.C. § 1955, see note 1, supra, carrying a maximum sentence of five years' imprisonment and a $20,000. fine, and six counts of violating 18 U.S.C. § 1511, see note 3, supra, also carrying a maximum sentence of five years' imprisonment and a $20,000. fine for each count
 
 
 [16]
 The guidelines were adopted in 1973 and amended effective May 5, 1976. See 41 Federal Register 19326 (1976). Silverman, supra, contains an extensive discussion of the guidelines. The guidelines were also applied by this Circuit in Hill v. Attorney General of the United States, 550 F.2d 901 (3d Cir. 1977). Other circuit courts of appeals also have discussed the guidelines extensively. See, e. g., Ruip v. United States, 555 F.2d 1331 (6th Cir. 1977); Kills Crow v. United States, 555 F.2d 183 (8th Cir. 1977); Kortness v. United States, 514 F.2d 167 (8th Cir. 1975)
 
 
 [17]
 Brief for appellant Bazzano at 15
 
 
 [18]
 Id. at 24
 
 
 [19]
 Id. at 25
 
 
 [20]
 This contention is made by all defendants except Bazzano. Brief for appellant Guffey at 19-23; brief for appellants Ward and Orsini at 2-12; brief for appellant Poljak at 11-12; brief for appellant Matz at 19-20
 
 
 [21]
 This contention is raised by all the defendants except Bazzano and Poljak. Brief for appellant Guffey at 3-11; brief for appellants Ward and Orsini at 15-17; brief for appellant Matz at 9-10
 
 
 [22]
 Guffey and Matz contend that the court erred in denying their motion for severance from prejudicial joinder. Brief for appellant Guffey at 12-18; brief for appellant Matz at 14-16. Ward, Orsini and Matz contend that a violation of the order sequestering witnesses prevented a fair trial. Brief for appellants Ward and Orsini at 13-15; brief for appellant Matz at 7. Ward and Orsini contend that the Government failed to prove specific charges and that the district court erred in failing to require the Government to elect between 18 U.S.C. § 1511 (see note 3, supra ) and 18 U.S.C. § 1955 (see note 1, supra ). Brief for appellants Ward and Orsini at 17-20. Poljak and Matz contend that the district court erred in admitting the hearsay testimony of F.B.I. Agent Fitzpatrick of a statement made by Gary Pastore, a deceased, alleged co-conspirator. Brief for appellant Poljak at 27-29; brief for appellant Matz at 8, 11-14. Poljak contends that the district court erred in refusing to dismiss the indictment at the conclusion of the Government's case, in failing to confer with defense counsel prior to answering the last question raised by the jury during its deliberations, and in refusing to grant the motion to suppress evidence obtained through an allegedly defective search warrant. Brief for appellant Poljak at 22-23. Matz contends that a new trial is required by prosecutorial misconduct before the jury, brief for appellant Matz at 8, that the court erred in failing to grant his motion for a continuance, id. at 4, and that "the cummulation of events" described below constitute unfairness requiring a new trial (id. at 17-18):
 "1. He was required to stand trial in a complicated multi-defendant conspiracy case with counsel who had been appointed on the day that jury selection was to begin.
 "2. He was prevented from securing the needed and desirable expert testimony because of the shortness of time.
 "3. He was refused the right to be tried alone, despite the fact that most of the activities described by the prosecution testimony took place long after Matz could have been a part of the alleged conspiracy and after manifest prejudice in the joint trial became apparent.
 "4. The witness who sponsored the tape exhibits and the witness who testified to an alleged payment were surreptitiously and unlawfully coached by the prosecution through the violation of the secrecy of the grand jury.
 "5. The trial court admitted a hearsay declaration of the decedent Pastore which was made long after the time when Matz is accused of conspiring and in violation of the Bruton principle.
 "6. The prosecutor intentionally abused the Bruton principle in the presence of the court and jury in attempting to place before the jury the Pastore statement concerning Matz.
 "7. And the court failed or refused to recognize appellant's rights through the grant of post trial motions."
 
 
 [1]
 The guidelines to which the judge referred were not identified, although it seems likely that they were the guidelines adopted by the Parole Commission. See 28 C.F.R. §§ 2.1-2.58. Cf. Appellant's brief at p. 32, where a conjecture is made that the guidelines might have been the sentencing standards incorporated in a pending Senate bill. For a discussion of the bill's provisions, see Kennedy, Criminal Sentencing: A Game of Chance, 60 Judicature 208, 212-215 (December 1976)
 As the majority properly points out, Bazzano made no attempt to ask the court to clear up any doubt regarding the nature of the guidelines applied in his case. He did not ask the district court for an explanation of the meaning of the term "guidelines" or for a statement of the reasons for his sentence.
 
 
 [2]
 See appellant's brief at pp. 31-32. Bazzano claims that the "guidelines" should have been made available to him. Yet his counsel was not precluded from requesting them, and thus it is not now appropriate for Bazzano to complain about the fact that the judge did not articulate more fully the reasons for the sentence
 
 
 [3]
 See United States v. Tucker, 404 U.S. 443, 446-447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); Blockburger v. United States, 284 U.S. 299, 305, 52 S.Ct. 180, 76 L.Ed. 306 (1932)
 
 
 [4]
 United States v. Fessler, 453 F.2d 953, 954 (3d Cir. 1972). See also United States v. Lee, 532 F.2d 911, 916 (3d Cir. 1976); Government of Virgin Islands v. Richardson, 498 F.2d 892, 894 (3d Cir. 1974)
 
 
 [5]
 As the Supreme Court said in Williams v. New York, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949): "(T)he punishment should fit the offender and not merely the crime . . ."
 
 
 [6]
 For discussion of the need to deter crime generally, as well as to deter and to rehabilitate a particular defendant, see, e. g., United States v. Foss, 501 F.2d 522, 527-528 (1st Cir. 1974); M. Frankel, Criminal Sentences: Law Without Order 106 (1972); H. Packer, The Limits of the Criminal Sanction 63 (1968). Cf. Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974): "An important function of the corrections system is the deterrence of crime. The premise is that by confining criminal offenders in a facility where they are isolated from the rest of society, a condition that most people presumably find undesirable, they and others will be deterred from committing additional criminal offenses."
 
 
 [7]
 Dorszynski v. United States, 418 U.S. 424, 443, 94 S.Ct. 3042, 3053, 41 L.Ed.2d 855 (1974), quoting United States v. Hartford, 489 F.2d 652, 654 (5th Cir. 1974) (emphasis in original). The Supreme Court in Dorszynski held that § 5010(d) of the Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq., requires a federal court to make a finding that the offender would not benefit from treatment under the Act; it does not require that the finding be accompanied by a statement of reasons. This ruling was founded upon the Court's interpretation of Congressional intent. See 418 U.S. at 436-440, 442 n.15, 94 S.Ct. 3042. The Court did stress that the "no benefit" finding must be clear and explicit, see id. at 443-444, 94 S.Ct. 3042. Cf. id. at 445, 455-457, 94 S.Ct. 3042. (Marshall, J., concurring in judgment)
 
 
 [8]
 See 404 U.S. at 444 n.1, 92 S.Ct. 589
 
 
 [9]
 Id. at 447, 92 S.Ct. at 592
 
 
 [10]
 See id. at 448-449, 92 S.Ct. 589
 
 
 [11]
 See McGee v. United States, 462 F.2d 243, 247 (2d Cir. 1972). See also Townsend v. Burke, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948) (holding that the defendant was denied due process of law when a trial judge relied upon "assumptions concerning his criminal record which were materially untrue"); United States v. Bass, 175 U.S.App.D.C. 282, 290, 535 F.2d 110, 118 (1976) ("In monitoring the sentencing process, appellate courts have shown particular concern over sentences imposed on the basis of information which is materially false.")
 
 
 [12]
 See 404 U.S. at 444 n.1, 92 S.Ct. 589
 
 
 [13]
 See, e. g., United States v. Latimer, 415 F.2d 1288, 1290 (6th Cir. 1969)
 
 
 [14]
 Cf. United States v. Malcolm, 432 F.2d 809, 818 (2d Cir. 1970) (record apparently revealed that trial judge was confused about prior criminal record of defendant)
 
 
 [15]
 See, e. g., McGee v. United States, 462 F.2d 243, 246 (2d Cir. 1972). In McGee, a defendant was convicted on four counts of violating the Selective Service Act, and identical concurrent sentences were simultaneously imposed. It was subsequently determined that the conviction on the most serious of the counts, namely, refusing to submit to induction, was unlawful. Judge Friendly noted that, in such circumstances, it is not improbable that the initial sentencing process was affected by the conviction that was determined to have been illegal. Id. at 246. In light of that, the Second Circuit maintained that the trial judge should either reduce the sentences on the remaining counts or provide an explanation for declining to do so. See also North Carolina v. Pearce, 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 2089, 23 L.Ed.2d 656 (1969): "(W)henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear."
 
 
 [16]
 415 F.2d 1288 (6th Cir. 1969)
 
 
 [17]
 See id. at 1290
 
 
 [18]
 Id
 
 
 [19]
 See id. at 1291
 
 
 [20]
 Cf. Kutak & Gottschalk, In Search of a Rational Sentence: a Return to the Concept of Appellate Review, 53 Neb.L.Rev. 463, 496-499 (1974) (contending that a statement of reasons is desirable largely because it would aid the effective judicial review of sentencing)
 
 
 [21]
 Under the present practice, federal judges are under no obligation to state the reasons for sentences. See, e. g., United States v. Donner, 528 F.2d 276, 279 (7th Cir. 1976); Washington v. Regan, 510 F.2d 1126, 1129 (3d Cir. 1975). Cf. United States v. Velazquez, 482 F.2d 139, 142 (2d Cir. 1973); United States v. Brown, 479 F.2d 1170, 1172 (2d Cir. 1973). The Second Circuit, in Velazquez and Brown, supra, while recognizing the considerable value of a statement of reasons for sentences, did not take the step of requiring that this procedure be followed in all cases. See also Dorszynski v. United States, 418 U.S. 424, 455-457, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974) (Marshall, J., concurring in judgment), where Justice Marshall took the position that a statement of reasons for a judge's "no benefit" finding regarding juveniles not committed to treatment under the Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq., should be required. Thus far, then, the literature on sentencing has gone considerably further in recommending this procedural change than has the case law. See also the references cited in note 41 infra
 
 
 [22]
 Cf. Friendly, Some Kind of Hearing, 123 U.Pa.L.Rev. 1267, 1292 (1975) ("The necessity for justification is a powerful preventive of wrong decisions.")
 
 
 [23]
 The procedural requirement of a statement of reasons would be a strong " 'safeguard against rash and arbitrary decisions' at this crucial stage of the criminal process where the defendant's liberty is at stake. M. Frankel, Criminal Sentences Law Without Order 41 (Hill and Wang 1972). It would serve 'to promote thought by the decider, to compel him to cover the relevant points, to help him eschew irrelevancies and, finally, to make him show that these necessities have been served.' " United States v. Brown, 479 F.2d 1170, 1172 (2d Cir. 1973); see also id. at 1175-1176 (Feinberg, J., dissenting)
 
 
 [24]
 Commentators have stressed that the sentencing process is incapable of totally rational definition or description. See, e. g., D. Jackson, Judges 370 (1974) ("The psychological roots of a judge's sentence reach into a bog where most judges fear to tread."). Nevertheless, "a good sentence is one which can be reasonably explained," Youngdahl, Remarks Opening the Sentencing Institute Program, 35 F.R.D. 387, 388 (1964). By having to state his reasons for a sentence, a trial judge will of necessity focus on the factors relevant to punishment in a given case, and this by itself should make the process more rational. See ABA Project in Minimum Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences (hereinafter cited as ABA Project ) § 2.3(c) and commentary (e) at 45-47 (App. Draft 1968). In addition, sentences that may seem arbitrary or irrationally-based in the absence of an explanation might well have a reasonable foundation. Such a matter can be known with definiteness only when the basis of a sentence is explicitly stated. See Coburn, Disparity in Sentences and Appellate Review of Sentencing, 25 Rutgers L.Rev. 207, 217 n.63 (1971)
 
 
 [25]
 Wyzanski, A Trial Judge's Freedom and Responsibility, 65 Harv.L.Rev. 1281, 1292-1293 (1952)
 
 
 [26]
 See also ABA Project, note 24 supra, at 46-47. Of course, there may be instances in which an explanation would lead to greater harm than benefit to a defendant. In such a case, a trial judge should not make the reasons available to the defendant, although he still should articulate his reasons and incorporate them in the record. The reasons thus would be transmitted to the reviewing court if there is an appeal, and to the corrections authorities if the defendant is committed. This procedure would protect the value of having a statement of reasons, the special sensitivities of a defendant and the discretion of a sentencing judge
 
 
 [27]
 See ABA Project, note 24 supra, at 46. New Jersey recognizes the value of a statement of reasons to correctional officials in requiring that such a statement and the pre-sentence report be submitted to the institution at which a defendant is confined. See id., quoting N.J.Super. and County Cts. (Crim.) R. 3:7-10(b)
 
 
 [28]
 Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 quoted in In Re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). Cf. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 171-172, 71 S.Ct. 624, 649, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring) ("The validity and moral authority of a conclusion largely depend on the mode by which it was reached."). See also Summers, Evaluating and Improving Legal Process A Plea for 'Process Values,' 60 Cornell L.Rev. 1, 21-27 (1974)
 
 
 [29]
 Cf. K. Davis, Discretionary Justice 137 (1969), where it is said that under the present system a sentencing judge "can announce his decision without findings, without reasons, without relating what he does with what he has done before, and without relating his decision to the relevant decisions of other judges. His discretionary power is so much at large that review by an appellate court would usually be futile."
 
 
 [30]
 See Evans & Gilbert, The Case for Judicial Discretion in Sentencing, 61 Judicature 66, 69 (August 1977): "The public deserves to know the well defined reasons for sentences if their faith in the entire justice system is to be restored." Cf. Sentencing the Defendant : He Deserves to Know Why, The Philadelphia Inquirer, p. 6-A (August 29, 1977) (referring to the "crime explosion" of the 1960's and the "unrestricted power" of courts in sentencing, which has come under increasing public scrutiny and criticism). See also McCleary v. State, 49 Wis.2d 263, 182 N.W.2d 512, 521 (1971), where the Wisconsin Supreme Court embraced the requirement that reasons for sentences be given by trial judges, and wrote:
 "In all Anglo-American jurisprudence a principal obligation of the judge is to explain the reasons for his actions. His decisions will not be understood by the people . . . unless the reasons for decisions can be examined."
 
 
 [31]
 Board of Regents v. Roth, 408 U.S. 564, 591, 92 S.Ct. 2701, 2716, 33 L.Ed.2d 548 (1972) (Marshall, J., dissenting). See James v. United States, 476 F.2d 936, 937 (8th Cir. 1973). Cf. Davis v. Clark, 131 U.S.App.D.C. 379, 381, 404 F.2d 1356, 1358 (1968) (requiring a statement of reasons for denying a motion for leave to appeal in forma pauperis "is not onerous if the matter was dealt with in a conscientious manner in passing on the merits"). See generally Davis, Discretionary Justice 104-105 (1969); Note, Appellate Review of Sentences and the Need for a Reviewable Record, 1973 Duke L.J. 1357, 1375
 
 
 [32]
 An argument that is often advanced for not imposing the requirement in question is that it is at odds with our tradition of deferring to the sentencing discretion of trial judges. See, e. g., United States v. Brown, 479 F.2d 1170, 1173 (2d Cir. 1973), where the court wrote that, although a trial judge should be "encouraged" to state the reasons for sentences, "we have repeatedly held that in view of the trial judge's very broad discretion . . . he is generally under no obligation to give reasons for his sentencing decisions . . ."
 
 
 [33]
 Cf. Holmes, The Path of the Law, 10 Harv.L.Rev. 457, 469 (1898): "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past."
 
 
 [34]
 See United States v. Schipani, 315 F.Supp. 253, 259 (E.D.N.Y.), aff'd 435 F.2d 26 (2d Cir. 1970), cert. denied, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971): "Frequently, the decision will rest on the application of unarticulated principles and factors lying at the threshold of the conscious." See also Note, Appellate Review of Sentences and the Need for a Reviewable Record, 1973 Duke L.J., 1357, 1375
 
 
 [35]
 "(B)y comparison to the care with which the less-frequent problem of guilt is resolved, the protections in most jurisdictions surrounding the determination of sentences are indeed miniscule." ABA Project, note 24 supra, Introduction at 1-2. See also Berkowitz, The Constitutional Requirement for a Written Statement of Reasons and Facts in Support of the Sentencing Decision: a Due Process Proposal, 60 Iowa L.Rev. 205, 205-206 (1974)
 
 
 [36]
 See L. Weinreb, Denial of Justice Criminal Process in the United States 71 (1977): "The scheduling of a trial is generally nothing more than an elaborate charade . . . When all postponements of the trial are over and the scheduled date is imminent, in eight or nine cases out of ten the defendant pleads guilty and the case is taken off the court's calendar."
 
 
 [37]
 During fiscal year 1977, 84.25% Of all criminal defendants in the Third Circuit pled guilty or their cases were dismissed. (Information supplied by the Administrative Office of United States Courts). See Administrative Office Reports for Fiscal Year 1976, Tables D-6
 
 
 [38]
 For example, under the guidelines of the Federal Parole Commission, an official notification of the denial of parole is to be accompanied by the reasons for that decision. See 28 CFR § 2.13; Genego, et al., Parole Release Decisionmaking and the Sentencing Process, 84 Yale L.J. 810, 829 n. 93 (1975). Also, the Supreme Court has held that, when parole is revoked, the minimum procedures mandated by due process include, inter alia, "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). See also Wolff v. McDonnell, 418 U.S. 539, 564-565, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that due process requires, in the context of prison disciplinary proceedings resulting in the loss of good time credits, that a factfinder make a statement of reasons for the decision and of the evidence relied upon; such a requirement will help to assure that the officials "will act fairly.")
 
 
 [39]
 The Supreme Court of Pennsylvania recently announced that henceforth trial courts are to articulate the reasons for sentences. See Commonwealth v. Riggins, 377 A.2d 140, 144-150 (Pa.1977). The Supreme Court of New Jersey also has a rule requiring a statement of reasons when a custodial sentence is imposed. See Washington v. Regan, 510 F.2d 1126, 1129 n. 4 (3d Cir. 1975). The New Jersey Sentencing Manual for Judges (1975) notes:
 Formulation of reasons should lead to a greater uniformity of sentencing by trial judges and should convey to appellate courts, institutions, and the State Parole Board information of the greatest value . . . Given the difficult problems of theory and fact involved in a review for abuse of discretion in sentencing, the reasons for the sentence are essential to the appellate record . . .
 New Jersey v. Sanducci, 150 N.J.Super. 400, 375 A.2d 1216 (App.Div.Sup.Ct., 1977).
 
 
 [40]
 Cf. Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv.L.Rev. 489, 495-498, 502-503 (1977), where concern is expressed because state courts currently seem to be more active than federal courts in protecting the individual rights of citizens
 
 
 [41]
 For discussion of the benefits of a statement of reasons for sentences, see, e. g., Dorszynski v. United States, 418 U.S. 424, 455-457, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974) (Marshall, J., concurring in judgment); United States v. Moore, 176 U.S.App.D.C. 309, 311-313, 540 F.2d 1088, 1091-1092 (1976) (separate statement of Bazelon, C. J.); United States v. Velazquez, 482 F.2d 139, 142 (2d Cir. 1973); United States v. Brown, 479 F.2d 1170, 1172-1173 (2d Cir. 1973); United States v. Phillips, 156 U.S.App.D.C. 217, 219, 479 F.2d 1200, 1202 (1973); K. Davis, Discretionary Justice 137 (1969); Frankel, Criminal Sentences Law Without Order 39-49 (1972); Goldfarb and Singer, After Conviction 191-195 (1972); American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences § 2.3(c) and commentary (e) at 45-47 (App. Draft 1968); American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures, § 5.6(ii) and commentary (b) at 270-271 (App. Draft 1968); Berkowitz, The Constitutional Requirement for a Written Statement of Reasons and Facts in Support of the Sentencing Decision: A Due Process Proposal, 60 Iowa L.Rev. 205, 208-212 (1974); Wyzanski, A Trial Judge's Freedom and Responsibility, 65 Harv.L.Rev. 1281, 1292-1293 (1952); Youngdahl, Remarks Opening the Sentencing Institute Program, 35 F.R.D. 387, 388 (1964); Note, Appellate Review of Sentences and the Need for a Reviewable Record, 1973 Duke L.J. 1357; Symposium, Appellate Review of Sentencing, 32 F.R.D. 257, 263, 274-275 (1962)
 
 
 [42]
 ABA Project, note 24 supra § 2.3(c)
 
 
 [43]
 A constitutional question of due process dimensions may also be involved in the failure of judges to give reasons for sentences. That issue is not considered in this opinion, although, if the requirement of a statement of reasons is not adopted, it may well have to be addressed in future cases. See generally Berkowitz, The Constitutional Requirement for a Written Statement of Reasons and Facts in Support of the Sentencing Decision: A Due Process Proposal, 60 Iowa L.Rev. 205 (1974)
 
 
 [44]
 It seems important to underscore what is not being recommended in this concurring opinion. First, the particular procedural requirement supported herein should not be confused with a broader recommendation made in some quarters for appellate review of the substance of sentences. See, e. g., Kennedy, Criminal Sentencing: A Game of Chance, 60 Judicature 208, 212-213 (December 1976); Comment, Appellate Review of Sentences: a Survey, 17 St. Louis L.J. 221, 244 (1972). Since appellate review of the substance of sentences would go much farther than a procedural requirement that reasons for sentences be advanced, the former matter must be analyzed separately. That task is not intended to be undertaken, nor its result in any way presupposed, in this opinion
 In addition, a distinction should be drawn between the suggestion that a statement of reasons be required, on the one hand, and the demand that a statement of a certain type or duration be mandated, on the other hand. It is urged here only that some statement of reasons for sentences be provided by trial judges. The additional question of what sort of explanation is required in certain circumstances is a matter worthy of separate consideration in an appropriate case.
 
 
 [45]
 Such delay occurs when the appellate court is forced to remand a case for reconsideration of the sentence because no clear basis of the sentence has been enunciated. Cf. United States v. Eberhardt, 417 F.2d 1009, 1014-1015 (4th Cir. 1969), where Judge Sobeloff wrote of a trial judge's sentencing power:
 "(I)t is true that he could sentence only for the offense of which the defendants had been convicted . . . Precisely what passed through the judge's mind is purely speculative and we have no reason to think that the judge undertook to impose a penalty for the second offense. However, we consider it fair and in the interest of justice in this instance to remand the case . . . for further consideration of the sentences . . ." (emphasis added)
 See also Jenkins v. United States, 530 F.2d 1203, 1204 (5th Cir. 1976).