20574

The STATE, Respondent, v. Dale CROSS, Appellant.

(240 S. E. (2d) 514)

*Robert L. Kilgo,* of Darlington, *for Appellant,*

*Brian P. Gibbes* and *Edward B. Latimer, Asst. Attys. Gen.,* of Columbia, and *J. Dupre Miller, Sol.,* of Bennettsville, *for Respondent,*

December 29, 1977.

*Per Curiam:*

The defendant-appellant, Dale Cross, was charged in the Court of General Sessions for Darlington County in six sep-

arate indictments for violation of §§ 16-192.3 and 16-129.2 (f) of the Code of Laws of South Carolina (1962) *as amended* (1975 Supp.), which are parts of the new pistol law [1]. The statute became effective July 1, 1975. The State charges sales of pistols without a state license, by the defendant on the following dates: August 2, 1975; August 8, 1975; August 13, 1975; September 18, 1975; and October 22, 1975, all *contra* to § 16-129.3. The sixth indictment charges the defendant with having in his possession a pistol from which the original serial number had been removed or obliterated *contra* to § 16-129.2(f).

The first of the indictments called for trial (No. 240) was presented to the court on December 14, 1976. After the State had rested its case, a conference was held with defense counsel, the solicitor and the judge participating. Thereafter, the defendant plead guilty to all six indictments. In open court the usual questions were asked and answered, indicating free and voluntary pleas.

Number 240 .................. Two years or $2,000.00
Number 241 .................... One year or $500.00
Number 242 .................... One year or $1,000.00
Number 244 .................. Two years or $2,000.00
Number 245 .................. Two years or $2,000.00
Number 243 (Possession of pistol with obliterated serial number) .................... Two years or $1,500.00

All sentences were consecutive. The total sentence was ten (10) years or Nine Thousand and No/100 ($9,000.00) Dollars.

Thereafter, the defendant gave notice of intention to appeal, setting forth four exceptions or allegations of error. Our disposition of the third exception renders others moot. By this exception the defendant submits that he was unduly coerced to plead guilty.

[1] Now codified as 23-31-110, *et seq.,* Code of 1976.

We sustain the exception, reverse and remand. We ■ agree with the defendant that he was placed in a position of being unduly coerced as a matter of law, inasmuch as he had no choice but to enter guilty pleas in order to avoid an assured prison sentence in the event of conviction.

The statement agreed to by counsel for the defendant and the solicitor, by which we are bound, contains the following:

"Prior to the plea and during discussions with the Court and the Solicitor, the Court told the Solicitor and defendant's attorney that if defendant pleaded guilty, he would sentence him to a substantial fine and no prison term. He further stated that if he went forward with his trial and was convicted, he would be sentenced to at least one (1) year in jail on that one (1) case alone. This information was communicated to defendant by his attorney. Thereupon, the defendant withdrew his plea of not guilty and pleaded guilty to all charges so as to avoid the certainty of at least one (1) year in jail."

Article 1, § 14 of the South Carolina Constitution provides as follows:

"The right of trial by jury shall be preserved inviolate. Any person charged with an offense shall enjoy the right to a speedy and public trial by an impartial jury; . . . and to be fully heard in his defense by himself or by his counsel or by both."

Article VI, Amendments to the United States Constitution, provides as follows:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . .."

The practice of plea bargaining was for many years carried on by personnel of the court sub-rosa. In the case of *Santobello v. New York,* 404 U. S. 257, 92 S. Ct. 495, 30 L. Ed. (2d) 427 (1917), the United States Supreme Court held in effect that plea bargaining was not only to be tolerated, but when properly administered was to be encouraged.

Since that time prosecuting attorneys throughout the country have used this means of procuring guilty pleas in an effort to keep dockets current. Federal Court Rules of Criminal Procedure have established procedures, but in this State no such edict has been promulgated by rule or otherwise.

A portion of Federal Rule 11, with which we find no fault, is as follows:

"(e) Plea Agreement Procedure.

(1) In General. The attorney for the government and the attorney for the defendant or the defendant when acting *pro se* may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or *nolo contendere* to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

*The court shall not participate in any such discussions.*" (Emphasis added.)

Having no rule of court or prior case as a precedent, we determine what is constitutionally required as a matter of fairness.

While we acquiesce in the tendency of the courts to allow plea bargaining we are of the opinion that the judge should not initiate or influence the agreement, nor be a party to the negotiations. A plea induced by the influence of the judge cannot be said to have been voluntarily entered. The solicitor is the adversary of the defendant and his counsel. The negotiations should be between the adversaries. The judge is not the adversary of either. An agree-

ment reached between the solicitor and his adversary can never be more than a recommendation. The judge must remain in a position of complete neutrality such that he may, in the last analysis, exercise freedom of sentencing judgment based on all of the facts.

There is an excellent discussion of this subject in *United States v. Werker,* 535 F. (2d) 198 (2nd Cir. 1976). That case was decided under Rule 11, *supra,* but the rationale is applicable to the rule which we would apply to the case at hand.

In that case the government petitioned for a writ of mandamus to require the trial District Judge to refrain from disclosing to defendant, prior to plea of guilty, the sentence to be imposed if a plea were subsequently submitted. The assistant United States Attorney in charge of the case, in keeping with the long standing policy of his office, refused to discuss any possible recommendation regarding sentence in return for a plea of guilt. Thereafter, the judge indicated at a pretrial conference he would inform one of the defendants of the sentence to be imposed if he were to plead guilty. Application for a writ of mandamus was made to the Circuit Court of Appeal, which held the action of the judge to be improper. The court said:

"Nor can we fail to consider the subtle pressures that may be exercised by a judge against a defendant who rejects an opportunity, presented by such a response as the judge here proposes to make, the acceptance of which may relieve the judge of a lengthy trial. Any predilections of guilt that a judge might hold regarding a defendant must inevitably be reinforced by the knowledge that the defendant wishes to engage in plea bargaining discussions. While these factors inhere in all plea bargaining agreements, their effect on the voluntariness of the plea and the subsequent trial could only be greater where the judge is himself the active participant in constructing the terms of the rejected agreement."

In *Commonwealth v. Evans,* 434 Pa. 52, 252 A. (2d) 689 (1969), the trial judge participated in the plea bargaining discussion. The Supreme Court of Pennsylvania said:

"It is the view of this Court that such a procedure is not consistent with due process and that a plea entered on the basis of a sentencing agreement in which the judge participates cannot be considered voluntary.

. . . . .

"This position is in conformity with that of the most respected commentary in the area. For example, Informal Opinion No. 779. ABA Professional Ethics Committee announces that 'A judge should not be a party to advance arrangements for the determination of sentence, whether as a result of a guilty plea or a finding of guilty based on proof.' 51 A.B.A.J. 444 (1965). Furthermore, the American Bar Association Project on Minimum Standards for Criminal Justice sets out the explicit provision under 'Responsibilities of the trial judge' that 'The trial judge should not participate in plea discussions.' ABA Minimum Standards, Pleas of Guilty, § 3.3 (Tent. Draft, February, 1967). First, the defendant can receive the impression from the trial judge's participation in the plea discussions that he would not receive a fair trial if he went to trial before the same judge. Second, if the judge takes part in the pre-plea discussion, he may not be able to judge objectively the voluntariness of the plea when it is entered. Finally, the defendant may feel that the risk of not going along with the disposition which is apparently desired by the judge is so great that he ought to plead guilty despite an alternative desire."

We hold under the facts of this case that the defendant was unduly coerced, as a matter of law, to give up his constitutional right to plead not guilty.

Problems often arise when a judge refuses to accept the recommendation of the solicitor growing out of a plea bargain. This opinion does not deal with that issue.

The case is remanded for the purpose allowing the defendant to withdraw his guilty pleas.

Reversed and remanded.