## 21441

William G. HARDEN, Appellant, v. STATE of South Carolina, Respondent.

(277 S. E. (2d) 692)

*Randall M. Chastain,* Columbia, *for appellant.*

*Asst. Atty. Gen. William K. Moore,* Columbia, *for respondent.*

April 27, 1981.

*Per Curiam:*

Appellant Harden pleaded guilty to distribution of marijuana to a minor and contributing to the delinquency of a minor. He was sentenced to nine years, suspended upon service of three years with five years probation, consecutive to a sentence previously imposed. His motion for post-conviction relief was denied after a hearing. We affirm.

The significant question in this case is the interpretation to be accorded our decisions in *State v. Cross,* 270 S. C. 44, 240 S. E. (2d) 514 (1977) and *Beaver v. State,* 271 S. C. 381, 247 S. E. (2d) 448 (1978). Appellant asserts that he should be accorded a new trial because:

(1) The trial judge was involved in his plea bargain negotiations.

(2) Because he was informed by his counsel that the trial judge was so involved.

(3) Because he felt as a result of having been so informed that he had no effective choice other than to go along with the arrangement made.

The State contends that *Cross* and *Beaver* must be interpreted in light of a "rule of reason" and that they essentially should be limited to their facts, to wit: a defendant

should be allowed to re-plead only upon making a substantial showing of the exercise of actual coercive power on the part of the judge to force the defendant to accept a plea bargain.

There is language in *Cross and Beaver* which gives substantial comfort to the position of the appellant. It is also true that the facts in those cases indicated much more direct coercion by trial judges than appears in this case.

Appellant argues he was told by his attorney that he had to accept a sentence range of from six to nine years via the plea bargain process or run substantial risks. His attorney, testified:

"I am inclined to think that when we were talking at Judge Rice's in Dillon, naturally I think Bill felt rather rushed and I feel very certain I explained what the Court schedule was and who the Judge was who was coming in January, why it was that the decision had to be made, *and why it was a now or never kind of thing*. And that we did want to get this case before [the trial judge].

"Q. So, again, to make sure my understanding in that is clear, I believe you explained to him the source of some time pressure on the Judge and the plea process?
"A. Yes." (Emphasis supplied).

This evidence, while indicating some time pressure, falls short of proof that the judge himself actually took an affirmative role in pressuring the appellant. However, appellant's attorney also testified that the proposed sentence range which he communicated to appellant originated with the trial judge.

In *Cross, supra,* we held that we approved Rule 11 of the Federal Rules of Criminal Procedure insofar as it dealt with plea bargaining. In so writing, we quoted the relevant portion of the Rule, and emphasized by putting it in italics the last sentence of the portion quoted: " 'The court shall not

participate in any such [plea-bargain] discussions.' " (270 S. C. at 48, 240 S. E. (2d) at 516).

We further held that we were determining what was "constitutionally required as a matter of fairness" (*Id.*) and:

we are of the opinion that the judge *should not initiate* or influence the agreement, *nor* be a party to the negotiations. (*Id.*) (Emphasis supplied).

Thus, the language of *Cross, supra,* seems broader than the fact situation supporting it. The language of the decision, if not its facts, appear to cover the instant case, where *it is uncontradicted that the trial judge participated in plea bargain discussions* between the defense attorney and the Solicitor, *and initiated* the proposed bargain sentence range, and where the appellant was informed by his attorney that the deal he was then being offered was the best he was likely to get specifically because it involved that particular judge. Again, there is no claim here that the trial judge informed defense counsel that the defendant would be more heavily sentenced if he went to trial and were found guilty than he would be were he only to plead.

The question is therefore squarely presented: do the decisions in *Cross* and *Beaver, supra,* represent an effort to insure against coercion, or were the decisions guarding against the more direct substantial problems of after-the-fact finding of actual coercion which are suggested by their facts? If the decisions are designed to insure against coercion, this case would be covered by them and reversal of the denial of post-conviction relief would have to follow; the appellant would be entitled to plead anew. If the decision represented an effort simply to correct situations where the plea in question was too heavily influenced by the presence of the trial judge in the pleading process, this appellant's motion would fail as the determination of the hearing judge that the plea was voluntary is supported by the

record. *McCall v. State,* 258 S. C. 463, 189 S. E. (2d) 6 (1972).

Hence, we must examine the policy considerations involved. First, judicial economy would clearly be served best by an "insurance" approach. If the trial judges and the Bar knew any involvement of a judge in the plea bargain process outside of an on-the-record proceeding when the plea is taken would result in the individual's being able at a later time upon proper challenge to plea anew, the practice of discussing possible pleas with the judges would stop. So also would it be likely that post-convictioin proceedings based on involuntariness in the plea process would diminish.

From the standpoint of general justice and respect for the judicial system, many commentators have favored keeping judges completely out of the bargaining process prior to the actual taking of the plea.

However, there is a major problem with simply preventing the trial judges from participating in the plea bargain process. It is that virtually every defendant wants to know as soon as possible and as accurately as possible the sentence or the upper limits of the sentence that a judge contemplates handing down, the risk of coercion seemingly being discounted until a post-conviction relief application is filed. So also, naturally, do prosecutors, although the nature of their interest is somewhat different.

This overwhelming fact brought about a major change in the attitude of the American Bar Association. In formulating its Standards for Criminal Justice, between the first tentative version, which said simply that "the trial judge should not participate in any plea discussions," and the final version published in 1980, the ABA essentially reversed its stand. We set forth the final version of Standard 14-3.3, Pleas of Guilty, Responsibilities of the Trial Judge:

Standard 14-3.3. Responsibilities of the judge

(a) The judge should not accept a plea of guilty or *nolo contendere* without first inquiring whether the parties have

arrived at a plea agreement and, if there is one, requiring that its terms, conditions, and reasons be disclosed.

(b) If a plea agreement has been reached by the parties which contemplates the granting of a charge or sentence concessions by the judge, the judge should:

(i) order the preparation of a preplea or presentence report, when needed for determining the appropriate disposition;

(ii) give the agreement due consideration, but notwithstanding its existence reach an independent decision on whether to grant charge or sentence concessions; and

(iii) in every case advise the defendant whether the judge accepts or rejects the contemplated charge or sentence concessions or whether a decision on acceptance will be deferred until after the plea is entered and/or a preplea or presensentence report is received.

(c) When the parties are unable to reach a plea agreement, if the defendant's counsel and prosecutor agree, they may request to meet with the judge in order to discuss a plea agreement. If the judge agrees to meet with the parties, the judge shall serve as a moderator in listening to their respective presentations concerning appropriate charge or sentence concessions. Following the presentation of the parties, the judge may indicate what charge or sentence concessions would be acceptable or whether the judge wishes to have a preplea report before rendering a decision. The parties may thereupon decide among themselves, outside of the presence of the court, whether to accept or reject the plea agreement tendered by the court.

(d) Whenever the judge is presented with a plea agreement or consents to a conference in order to listen to the parties concerning charge or sentence concessions, the court may require or allow any person, including the defendant, the alleged victim, and others, to appear or to testify.

(e) Where the parties have neither advised the judge of a plea agreement nor requested to meet for plea discussion

purposes, the judge may inquire of the parties whether disposition without trial has been explored and may allow an adjournment to enable plea discussions to occur.

(f) All discussions at which the judge is present relating to plea agreements should be recorded verbatim and preserved, except that for good cause the judge may order the transcript of proceedings to be sealed. Such discussions should be held in open court unless good cause is present for the proceedings to be held in chambers. Except as otherwise provided in this standard, the judge should never through word or demeanor, either directly or indirectly, communicate to the defendant or defense counsel that a plea agreement should be accepted or that a guilty plea should be entered.

(g) In cases where a defendant offers to plead guilty and the judge decides that the final disposition should not include the charge or sentence concessions contemplated by the plea agreement, the judge shall so advise the defendant and permit withdrawal of the tender of the plea. In cases where a defendant pleads guilty pursuant to a plea agreement and the court, following entry of the plea, decides that the final disposition should not include the contemplated charge or sentence concessions, withdrawal of the plea shall be allowed if:

(i) prior to the entry of the plea the judge concurs, whether tentatively or fully, in the proposed change or sentence concessions; or

(ii) the guilty plea is entered upon the express condition, approved by the judge, that the plea can be withdrawn if the charge or sentence concessions are subsequently rejected by the court.

In all other cases where a defendant pleads guilty pursuant to a plea agreement and the judge decides that the final disposition should not include the contemplated charge or sentence concessions, withdrawal of the plea may be permitted in the discretion of the judge.

We acknowledge the controversial nature of the general subject of plea bargaining, and also acknowledge that the broad language of our earlier *Cross and Beaver* decisions, if not the facts of them, seems to indicate adherence to an "insurance" approach. We now specifically disavow adherence to the apparent position of the Federal Rules quoted in *Cross* that there are no circumstances in which a trial judge should participate in the plea bargain process prior to the taking of the actual plea. We believe that the position of the ABA Standard here set forth is sound. It provides access by the State and the defendant to the judge, and yet provides standards to guide all concerned so that the fear of coercion in the plea-bargain process, to which we are sensitive as the *Cross and Beaver* decisions indicate, should be minimal.

This opinion, since it deals with important aspects of justice and judicial administration, is to be given effect with modified prospectivity: it will apply to all cases pending either upon application for post-conviction relief or in the trial courts as of the day of its publication. Any application for post-conviction relief filed after the date of the publication of this opinion which attempts to raise participation of the trial judge in the plea bargain process will be evaluated according to the fact basis of *Cross* and *Beaver* (actual coercive effect of the judge's participation) unless the plea was taken on the day of publication of this opinion or later, in which case the application will be evaluated according to the guidelines here set forth. Post-conviction relief applications raising participation of the trial judge in the plea process which were pending on the day of the filing of this opinion, either in the Circuit Court or on appeal therefrom to this Court, will be individually evaluated as this one has been.

The record in this case reveals that there was sufficient evidence to support the determination of the hearing judge that no direct coercion by the trial judge was

involved in the original plea. Under the approach adopted in this opinion, the question is closer. The Standard is designed to prevent both the fact and the appearance of the trial judge's becoming an advocate against the desires of the defendant or the State of a particular resolution. While it is true that the various safeguards described in the Standard were not applied in this case, for the very good reason that they had not been yet articulated, we are satisfied that the appellant could not reasonably have felt coerced *by the judge* to accept this plea bargain. Thus, the denial of the application for post-conviction relief is affirmed.

All other issues raised are without merit and are dismissed under Rule 23 of the Rules of Practice of this Court.

Affirmed.

LITTLEJOHN and GREGORY, JJ., concur in result (see opinion).

HARWELL, J., not participating.

LITTLEJOHN and GREGORY, Justices (concurring) :

We concur in the result of the per curiam opinion of Chief Justice Lewis and Mr. Justice Ness but on the record before us deem it unnecessary and inappropriate to overrule either *Cross* or *Beaver*.

There has been no application in keeping with the rules of this Court to attack, modify or overrule either opinion which followed the generally accepted law and the minimum standards for Criminal Justice of the American Bar Association when issued.

The effect of our brothers' view would be to adopt a new concept of the standards and overrule our own decisions. A new rule as far reaching as that proposed should take place only after notification to the Attorney General and interested members of both bench and bar and fully briefed for this Court.

Here, we simply hold the trial judge's finding that the plea was voluntary is amply supported by the record. *McCall v. State,* 258 S. C. 463, 189 S. E. (2d) 6 (1972). We, too, would affirm.