No. 81-482

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

JOHN ALDIN HUBBARD,

Defendant and Appellant.

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade
Honorable Jack Shanstrom, Judge presiding

Counsel of Record:

For Appellant:

Sandra K. Watts argued, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Dorothy McCarter argued, Assistant Attorney General,
Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana

Submitted: June 23, 1982

Decided: August 25, 1982

Filed: AUG 25 1982

Thomas J. Kearney

Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Pursuant to a plea bargain agreement, defendant plead guilty to the crime of negligent homicide. The District Court sentenced defendant to consecutive terms of ten years imprisonment for negligent homicide and five years for the use of a weapon in committing that crime.

Defendant appeals from the sentence.

This is the second time defendant's case has come before this Court. Following an early morning shootout in a Great Falls trailer court in which two men were killed, defendant Hubbard and another were tried and convicted of mitigated deliberate homicide and burglary, respectively. We reversed Hubbard's conviction and remanded for a new trial. State v. Fish et al. (1980), ___ Mont. ___, 621 P.2d 1072, 37 St.Rep. 2065.

On remand, the Honorable Jack D. Shanstrom was substituted as the presiding judge. An amended information was filed charging Hubbard with negligent homicide. A written plea bargain agreement was signed and filed wherein defendant agreed to plead guilty to the crime of negligent homicide and acknowledged the possibility that the statute enhancing the penalty for use of a weapon in that crime might be applied to him.

On May 14, 1981, a hearing was held wherein defendant testified to his state of mind at the time of the crime; expert witnesses testified that defendant was under some duress at that time; and friends and a deputy sheriff testified concerning events that occurred on the night of the crime. Additionally, a psychiatrist at the Montana State Prison testified that his 1979 diagnosis of defendant

as antisocial was inaccurate.

The following day a sentencing hearing was held which included testimony by the district probation and parole officer, a clinical psychologist, defendant's mother and the defendant himself. Following this hearing Judge Shanstrom ruled that the enhancement statute applied to negligent homicide and that none of the exceptions to the statute applied. He sentenced the defendant to consecutive terms of ten years imprisonment for negligent homicide and five years for the use of a weapon in that crime. Defendant appeals from this sentence raising the following specifications of error:

(1) Does the statute enhancing the penalty for use of a weapon in the commission of a crime apply to negligent homicide?

(2) Was defendant denied due process by inclusion of negligent homicide in the enhancement statute?

(3) Does the record show that defendant was acting under unusual and substantial duress precluding application of the enhancement statute?

(4) Was error committed by the sentencing judge in admitting testimony amounting to retrial of the original charge of deliberate homicide and in sentencing defendant on an incomplete reading of the trial transcript?

(5) Was defendant prejudiced by the 1979 diagnosis of defendant as antisocial which was later retracted?

(6) Does justice require the five-year enhancement to be served consecutively rather than concurrently?

The statutes at issue in this case are set out below:

"46-18-221.  Additional sentence for offenses committed with a dangerous weapon. (1) A per-

-3-

son who has been found guilty of any offense and who, while engaged in the commission of the offense, knowingly displayed, brandished, or otherwise used a firearm, destructive device, as defined in 45-8-332(1), or other dangerous weapon shall, in addition to the punishment provided for the commission of such offense, be sentenced to a term of imprisonment in the state prison of not less than 2 years or more than 10 years, except as provided in 46-18-222.

". . .

"(4) An additional sentence prescribed by this section shall run consecutively to the sentence provided for the offense.

"46-18-222. Exceptions to mandatory minimum sentences and restrictions on deferred impostion and suspended execution of sentence. All mandatory minimum sentences prescribed by the laws of this state and the restrictions on deferred imposition and suspended execution of sentence . . . do not apply if:

". . .

"(3) the defendant, at the time of the commission of the offense for which he is to be sentenced, was acting under unusual and substantial duress, although not such duress as would constitute a defense to the prosecution;"

We will combine our discussion of the first and second issues because of their interrelationship. Appellant contends that (1) the legislative history of the above statutes demonstrates a legislative intent to include violent crimes (not negligent homicide) within the ambit of the legislation, (2) there is legislative intent to exclude result-oriented crimes not committed intentionally like negligent homicide, and (3) that since section 46-18-221(1) requires that defendant knowingly used a firearm, it cannot be used to enhance a sentence for negligent homicide where no specific intent is required and to do so violates defendant's procedural due process rights.

In construing a statute, the intent of the legisla-

ture is controlling. Section 1-2-102, MCA; Dunphy v. Anaconda Co. (1968), 151 Mont. 76, 438 P.2d 660, and cases cited therein. The intention of the legislature must first be determined from the plain meaning of the words used, and if interpretation of the statute can be so determined, the courts may not go further and apply any other means of interpretation. Dunphy v. Anaconda Co., supra, and cases cited therein. Where, as here, the language of the statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe. State v. Roberts (1980), ___ Mont. ____, 633 P.2d 1214, 38 St.Rep. 1551. The statute plainly says that "a person who has been found guilty of any offense" and while engaged in the commission of the offense knowingly uses a firearm is subject to an enhanced penalty of two to ten years. There is simply no reason for the use of legislative history to construe a statute where the language is clear and unambiguous on its face.

Nor do we see any conflict between the "knowingly" mental state required by the enhancement statute and the "negligently" mental state as it applies to negligent homicide. Negligent homicide is defined as follows:

> "Negligent homicide. (1) Criminal homicide constitutes negligent homicide when it is committed negligently." Section 45-5-104, MCA.

> "Negligently" is defined as:

> "(37) 'Negligently'—a person acts negligently with respect to a result or to a circumstance described by a statute defining an offense when he consciously disregards a risk that the result will occur or that the circumstance exists or when he disregards a risk of which he should be aware that the result will occur or that the circumstance exists. The risk must be of such a nature

-5-

and degree that to disregard it involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. 'Gross deviation' means a deviation that is considerably greater than lack of ordinary care. Relevant terms such as 'negligent' and 'with negligence' have the same meaning." Section 45-2-101(37), MCA.

"Knowingly" is defined as:

"(33) 'Knowingly'--a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence. Equivalent terms such as 'knowing' or 'with knowledge' have the same meaning." Section 45-2-101(33), MCA.

A person can knowingly use a firearm and still be negligent by grossly deviating from the conduct of a reasonable person in a similar situation with regard to the results of his actions. See, State v. Pierce (No. 81-343, decided July 7, 1982), ___ Mont. ___, ___ P.2d ___, ___ St.Rep. ___. There is no conflict between these two statutes.

We do not find appellant's due process arguments persuasive and much of what was said above applies to this contention also. We have previously held that the statute does not offend due process rights. State v. Davison (1980), ___ Mont. ___, 614 P.2d 489, 37 St.Rep. 1135. Appellant has cited no authority directly in point for his constitutional challenge. We decline to hold the enhancement statute unconstitutional on this basis.

With regard to the third issue, appellant contends

that the facts indicate that defendant was under unusual and substantial duress within the meaning of section 46-18-222(3), MCA, an exception to the enhancement statute. Appellant argues that the jury verdict of mitigated deliberate homicide (which requires "extreme mental or emotional stress," section 45-5-103, MCA) bears this out. Appellant also argues that the following facts indicate defendant was under the requisite amount of duress: defendant had just seen his friend shot, had been shot at himself, had had a gun pointed in his face, and had wrestled the gun away from its owner.

The District Court found that although there was "a certain amount of duress" in this case, it was not "unusual or substantial," triggering section 46-18-222, MCA. There was sufficient evidence in the record to support the District Court's determination, and we uphold it here. The District Court made the following statements in this regard, addressed to the defendant:

> "By your own admission you only intended to 'wing' him. You said, 'He shot Dale, so I shot him.' And then the statement was made that you only shot to wound him. Then you made the statement, 'Nobody sticks a gun in my face and gets away with it.' And, 'He deserves to die--he doesn't deserve to live.' 'He killed my friend, so I killed him.' I think that all of these statements, among others, indicate an intent to get even by the use of direct, physical force, a weapon."

The defendant also had the presence of mind to temporarily incapacitate the owner of the gun by kicking him in the groin. Finally, defendant shot and killed a man running away from him who posed no immediate threat to him. These facts do not indicate unusual or substantial duress but rather a revengeful attitude on defendant's part, seeking to

make the killer "pay" for shooting his friend.  There was no abuse of discretion by the District Court in so ruling. State v. Metz (1979), ___ Mont. ___, 604 P.2d 102, 36 St.Rep. 2261.

Next, appellant argues that the sentencing judge erred by admitting testimony which amounted to a retrial on the deliberate homicide charge and by failing to read the entire trial transcript.  We will address the latter part of this contention first.  The District Court judges of this state are burdened with heavy case loads as it is.  We are loathe to hold that the failure of a District Court judge to read every word of a trial transcript mandates a reversal.

Nor do we find any error in the admission of testimony by the District Court.  Such a hearing as was held here is required by section 46-18-223, MCA, which provides in part:

> "Hearing to determine application of exceptions.  (1) When the application of an exception provided for in 46-18-222 is an issue, the court shall grant the defendant a hearing prior to the imposition of sentence to determine the applicability of the exception."

To determine whether the defendant was operating under substantial or unusual duress, the District Court must necessarily consider the facts leading up to the fatal shootings. This is especially true here since the trial judge was not the sentencing judge.

Appellant's fifth issue involves whether the defendant was prejudiced with respect to a wrongful diagnosis by Montana State Prison officials on the presentence report. This point is raised because the psychiatrist who prepared the presentence report in 1979 (wherein he diagnosed the defendant as being antisocial) testified at the May 14, 1981 hearing that his diagnosis was inaccurate. Appellant

claims error because the District Court considered this report in sentencing the defendant. Appellant refers us to the following language in the court's order of May 27, 1981:

> "The Court, having heard and considered oral arguments together with all of the testimony and evidence presented at the sentencing hearing, the various presentence reports, the diagnostic evaluation from the Montana State Prison and the transcripts, and being fully advised . . ." (Emphasis added.)

Appellant has cited no authority for this novel assertion, and we reject it. The sentencing judge heard the psychiatrist testify regarding his mistaken diagnosis, and there is no indication that he did not abide by this testimony. The mere reference to the report in the court's order is not a sufficient ground for reversal.

Appellant's final contention alleges error for the District Court's sentence requiring the additional five years to run consecutively, rather than concurrently. Although the present statute requires that the sentence run consecutively (section 46-18-221(4), MCA, supra), at the time this defendant was sentenced the court had discretion to require the enhanced sentence to run concurrently. However, this goes to the equity of the sentence rather than its legality and should be directed to the Sentence Review Board and not this Court, State v. Metz, supra. Appellant should take up these concerns with the appropriate authority.

Affirmed.

_____
Chief Justice

We concur:

_____
John Conway Harrison

_____

_____
John C. Sheehy

_____
Justices

Mr. Justice Gene B. Daly dissenting:

I am not easily moved to dissent but, "Qui fortiter emungit, elicit sanguinem" -- "He who wrings the nose strongly brings blood." Proverbs XXX, 33. My nose has been strongly wrung. I am not unmindful of the close and constant interaction between "facts" and "law." However, any judicial deception that exists is more likely to apply to the facts rather than the law.

I have labored with the facts of this case since 1978 when I received the assignment to examine a District Court denial of bail to defendant Hubbard. My examination produced a normal young man, employed, etc., no previous record. In short, nothing in the personal record would militate against a reasonable bail. This Court agreed, and we set bail.

Thereafter, in 1980, I was assigned State v. Fish and Hubbard on appeal after trial. State v. Fish and Hubbard (1980), ___ Mont. ___, 621 P.2d 1072, 37 St.Rep. 2065.

The authorities at the District Court level took an unusually strong stand against these defendants which was not supported by the trial record. I authored an opinion with a unanimous Court and, among other things, set the facts straight based on the trial transcript. A person gets a feeling reading a trial transcript, where there is insufficient evidence to sustain a conviction, that perhaps things are done that are not compatible with due process or fair play. This moved the Court in its reversal to quietly admonish the local officials, "don't do it again."

The handling of this matter in the District Court created a sordid mess with the appearance of an effort to restoration of the status quo that existed prior to our

-11-

reversal on appeal. So, the sentence procedure that resulted from a broken plea bargain and the unusual sentence has been appealed again to this Court.

The facts in the majority opinion that presume to have examined this matter are outrageously inaccurate. They are slanted and limited in such a manner as to produce an appearance of extreme criminality and purposeful guilt upon the defendant. This is all in direct defiance of the facts as they were found to be from the transcript record of the trial!

I will quote a small portion of the appeal decision found reported 621 P.2d at 1078. This was part of the discussion on the accountability charges which were reversed:

> "In further support of the accountability theory, the State draws on the time Fish, Hubbard and Lodge were together earlier in the evening and on isolated remarks overheard from them, allegedly of an exceedingly violent nature and that all three were again present at Miller's trailer when Lodge approached the trailer door. Yet, the record is bare of any evidence of any preparation by any of the three to carry out these alleged threats; no one was armed, not even with a stick or rock. The record is more compatible with an intent by Fish to engage in a fist fight--to which he admits. The State admits in the record that no weapons were found when the vehicles were searched. Miller was the only person armed. We acknowledge that there was an uncommon amount of activity that evening that made its way into the record, but we are compelled to reject the conclusion reached from this by the State." (Emphasis added.)

The jury also rejected the theory offered by the State.

The entire second issue in the appeal case had to do with Hubbard's state of mind, yet the trial judge on sentence held a new hearing and received evidence WE HELD ON THE APPEAL WAS NOT RELEVANT.

The problem that Judge Shanstrom has is that he is

-12-

trying to give the defendant the maximum in terms of sentence on a minimum record and refused to consult or be guided by our appeal opinion which I insist is the law of the case.

The facts simply stated are that defendant Hubbard's judgment may have been faulty initially by permitting his sister to persuade him to join the group, "to make sure there is a fair fight." This eventually led him to the trailer park and the problems found there. Nevertheless, he was by the trial record a "bystander." As the trial record indicates, none of the young people were armed, not even with a stick. Miller shot through the door and wounded all three persons standing there—one fatally. All retreated except the dead person. Miller came out and fired two rounds in Hubbard's direction, appeared at the side of his car in the dark, put a gun in his face, and profanely threatened to kill Hubbard. Hubbard wrested the gun from Miller and the rest is history.

The point of all this is, in the judge's opinion, that Hubbard at this point was <u>not under unusual or substantial duress</u>. This is contrary to our findings on the original appeal.

I would like to move away from the facts and into the law applied against the defendant by the lower court, that resulted in an increase of penalty to fifteen years.

The District Court's decision to apply the enhancement statute, section 46-18-221, MCA, and add an extra five years to defendant's sentence for negligent homicide should be reversed on three grounds. First, because the enhancement statute contains a specific intent, "knowingly," it is

-13-

a contradiction in terms to apply it to a situation where admittedly defendant acted only "negligently." To say that a person may act "knowingly" and "negligently" at the same time and during the same act creates a vague, confusing and arbitrary standard of conduct. Secondly, and more important to due process, the District Court disrupted the plea bargaining process by actively participating in the negotiations. Such actions by a trial court have been condemned in numerous cases. See, Annot., 10 ALR4th 689, et seq. Lastly, even if the enhancement statute is applied to this case, the evidence does not support the District Court's conclusion that defendant was not acting under sufficient duress to meet the statutory exceptions of the enhancement statute. See, section 46-18-222, MCA.

The controlling language here is contained in the enhancement statute which provides in part that a person is subject to its application if he ". . . knowingly displayed, brandished, or otherwise used a firearm . . ."

This Court has held that when the legislature enacted the new criminal code in 1973, it substituted the words "purposely" and "knowingly" for the words "feloniously" and "intentionally." State v. Klein (1976), 169 Mont. 350, 547 P.2d 75. By definition, then, statutes containing the word "knowingly" contain a specific intent. Also by definition, acting "knowingly" is not acting accidently. State v. Seitzinger (1979), 180 Mont. 136, 589 P.2d 655.

In contrast, "negligently," by definition, refers to the commission of an act without regard to the actor's intent or knowledge. See definition in section 45-2-101(37), MCA.

Nevertheless, at the sentencing hearing the intent of defendant was repeatedly brought into evidence over the objection of defense counsel. The State with the encouragement of the District Court in effect retried defendant for deliberate homicide. See comment, supra.

The District Court rationalized the use of such evidence by trying to distinguish the knowing use of the firearm from the crime committed. This cannot be done simply because it subjects the defendant to proof of a specific intent where admittedly no specific intent is present. In essence, negligent homicide has been redefined as an act committed "knowingly," depriving defendant of his right to equal protection and due process and creating a vague statute.

> As the Washington Supreme Court stated:
>
> ". . . Statutes which define crimes must be strictly construed according to the plain meaning of their words to assure that citizens have adequate notice of the terms of the law, as required by due process. 'Men of common intelligence cannot be required to guess at the meaning of the enactment.' Winters v. New York, 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed.2d 840 (1947); Seattle v. Pullman, 82 Wash.2d 794, 797, 514 P.2d 1059 (1973). The word 'knowledge' has an ordinary and accepted meaning. A statutory redefinition of knowledge to mean negligent ignorance would completely contradict the accepted meaning. . ." State v. Shipp (1980), 93 Wash.2d 510, 610 P.2d 1322, 1326.

Moreover, the District Court interpreted the enhancement statute in such a way that a penalty is imposed for acts and an intent different from those in the underlying offense. In effect, the District Court has created a separate offense out of the enhancement statute, i.e., knowingly using a firearm or other destructive device. The defendant was then tried for this offense at the sentencing

hearing.

We stated in State v. Davison (1980), ___ Mont. ___, 614 P.2d 489, 37 St.Rep. 1135, that the enhancement statute neither creates nor penalizes a defendant with a separate offense. The District Court's interpretation of the enhancement statute, here, is not reconcilable with the holding in Davison. If the enhancement statute is to be used, as its name suggests, to "enhance" the underlying offense, it cannot impose an element of intent separate from the underlying offense.

As well as misinterpreting the enhancement statute, the District Court obstructed the purpose of the defendant's plea bargain by imposing a five-year sentence on top of the ten-year sentence for which defendant originally bargained. Such action by the District Court is in contravention to standards set by the American Bar Association Standards for Criminal Justice which limits the trial judge to the role of an impassive moderator. ABA Standards for Criminal Justice 14-3.3 (2d ed. 1980). When a plea is influenced by the actions of a judge it cannot be said to be voluntary. State v. Cross (1977), 270 S.C. 44, 240 S.E.2d 514. Plea negotiations should be between adversaries, and the trial judge should not participate for either side since it is his responsibility to determine unbiasedly the voluntariness of the plea.

Here, the District Court broke the plea bargain agreement in its bastardization of the enhancement statute. Defendant originally bargained up to the ten-year maximum sentence for negligent homicide. Only through active participation by the District Court was this maximum sentence

increased by five years.

Even if the enhancement statute could be said to apply to this case and if the District Court's participation in the plea negotiations could be considered proper, the District Court nevertheless abused its discretion by concluding that defendant did not come under the statutory exceptions to the enhancement statute. The record simply does not support the conclusion that defendant was not acting under unusual and substantial duress. See, State v. Fish and Hubbard, supra.

As related in the facts acknowledged by this Court on appeal, the owner of the rifle, Miller, shot two times at defendant moments before defendant himself came into possession of the rifle. Miller had shoved the rifle in defendant's face, threatening to blow his head off. Defendant wrested the rifle away from Miller. Defendant then walked over to his friend who had just been fatally struck in the neck with shrapnel from Miller's prior shots. Miller began to run away and defendant shot at him to prevent his escape. Clearly, this evidence of the situation preponderates against the District Court's conclusion that defendant was not under substantial duress at the time of the shooting. The District Court, therefore, abused its discretion. The statutory exception found in section 46-18-222(3), MCA, should apply, and the extra five-year sentence should be set aside.

I have made some broad statements and am mindful of my own frailties. However, it has been my purpose to deal with the facts in an impersonal and objective manner. I have perhaps been too critical of the lower court personnel.

I would like it understood that I do not speak in terms of conscious partiality or prejudgment, as no judge worthy of his office would knowingly permit any cloud of prejudice to darken his understanding or influence his decision.

_____
Justice

Mr. Justice Daniel J. Shea dissents and will file a written dissent later.

81-482

Mr. Justice Daniel J. Shea dissenting:

I join in the dissent of Justice Daly. It is refreshing on occasion to see an opinion no longer bathed in judicial language, but instead addressing the fundamental issues underlying the surface issues.

We don't know precisely why the trial court gave the sentence to defendant. In State v. Stumpf (1980), ____ Mont. ___, 609 P.2d 298, we held that "a trial court's right to exercise its discretion does not mean that a trial court should not disclose the reasons underlying a discretionary act. Absent reasons, the appellate court can only guess as to why the trial court made a particular decision." Here, the broad statement of the trial court that it relied on the sentencing report, without disclaiming that report's inaccuracy, places an appellate court in the impossible situation of not knowing whether the trial court relied on erroneous parts of the report. A sentence in that situation should not be upheld.

In United States v. Latimer (Ohio 1969), 415 F.2d 1288, the Court held that error in a presentence investigation report, if relied on, is a ground for remanding for resentencing. The case was remanded for resentencing because the record did not disclose whether the trial court had relied on erroneous or improper information. An eloquent argument in favor of a requirement that judges give reasons for their sentences, has been made in United States v. Bazzano (1977), 521 F.2d 1122, 1132.

Fundamental fairness requires that the reasons for a sentence be set out with precision. The defendant has a right to assurance that a judge was not relying on erroneous information. The record here is demonstrably lacking in that assurance.

FILED

SEP - 1 1982

Thomas J. Kortuff

CLERK OF SUPREME COURT
STATE OF MONTANA

Daniel J. Shea
Justice

-19-