MR. JUSTICE DALY
dissenting:
I am not easily moved to dissent but, “Qui fortiter emungit, elicit sanguinem” — “He who wrings the nose strongly brings blood.” Proverbs XXX, 33. My nose has been strongly wrung. I am not unmindful of the close and constant interaction between “facts” and “law.” However, any judicial deception that exists is more likely to apply to the facts rather than the law.
I have labored with the facts of this case since 1978 when I received the assignment to examine a District Court denial of bail to defendant Hubbard. My examination produced a normal young man, employed, etc., no previous record. In short, nothing in the personal record would militate against a reasonable bail. This Court agreed, arid we set bail.
Thereafter, in 1980,1 was assigned State v. Fish and Hubbard on appeal after trial. State v. Fish and Hubbard (1980), Mont., 621 P.2d 1072, 37 St.Rep. 2065.
The authorities at the District Court level took an unusually strong stand against these defendants which was not supported by the trial record. I authored an opinion with a unanimous Court and, among other things, set the facts straight based on the trial transcript. A person gets a feeling reading a trial transcript, where there is insufficient evidence to sustain a conviction, that perhaps things are done *116 that are not compatible with due process or fair play. This moved the Court in its reversal to quietly admonish the local officials, “don’t do it again.”
The handling of this matter in the District Court created a sordid mess with the appearance of an effort to restoration of the status quo that existed prior to our reversal on appeal. So, the sentence procedure that resulted from a broken plea bargain and the unusual sentence has been appealed again to this Court.
The facts in the majority opinion that presume to have examined this matter are outrageously inaccurate. They are slanted and limited in such a manner as to produce an appearance of extreme criminality and purposeful guilt upon the defendant. This is all in direct defiance of the facts as they were found to be from the transcript record of the trial!
I will quote a small portion of the appeal decision found reported 621 P.2d at 1078. This was part of the discussion on the accountability charges which were reversed:
“In further support of the accountability theory, the State draws on the time Fish, Hubbard and Lodge were together earlier in the evening and on isolated remarks overheard from them, allegedly of an exceedingly violent nature and that all three were again present at Miller’s trailer when Lodge approached the trailer door. Yet, the record is bare of any evidence of any preparation by any of the three to carry out these alleged threats; no one was armed, not even with a stick or rock. The record is more compatible with an intent by Fish to engage in a fist fight — to which he admits. The State admits in the record that no weapons were found when the vehicles were searched. Miller was the only person armed. We acknowledge that there was an uncommon amount of activity that evening that made its way into the record, but we are compelled to reject the conclusion reached from this by the State.” (Emphasis added.)
The jury also rejected the theory offered by the State.
The entire second issue in the appeal case had to do with *117 Hubbard’s state of mind, yet the trial judge on sentence held a new hearing and received evidence WE HELD ON THE APPEAL WAS NOT RELEVANT.
The problem that Judge Shanstrom has is that he is trying to give the defendant the maximum in terms of sentence on a minimum record and refused to consult or be guided by our appeal opinion which I insist is the law of the case.
The facts simply stated are that defendant Hubbard’s judgment may have been faulty initially by permitting his sister to persuade him to join the group, “to make sure there is a fair fight.” This eventually led him to the trailer park and the problems found there. Nevertheless, he was by the trial record a “bystander.” As the trial record indicates, none of the young people were armed, not even with a stick. Miller shot through the door and wounded all three persons standing there — one fatally. All retreated except the dead person. Miller came out and fired two rounds in Hubbard’s direction, appeared at the side of his car in the dark, put a gun in his face, and profanely threatened to kill Hubbard. Hubbard wrested the gun from Miller and the rest is history.
The point of all this is, in the judge’s opinion, that Hubbard at this point was not under unusually or substantial duress. This is contrary to our findings on the original appeal.
I would like to move away from the facts and into the law applied against the defendant by the lower court, that resulted in an increase of penalty to fifteen years.
The District Court’s decision to apply the enhancement statute, section 46-18-221, MCA, and add an extra five years to defendant’s sentence for negligent homicide should be reversed on three grounds. First, because the enhancement statute contains a specific intent, “knowingly,” it is a contradiction in terms to apply it to a situation where admittedly defendant acted only “negligently.” To say that a person may act “knowingly” and “negligently” at the same time and during the same act creates a vague, confusing *118 and arbitrary standard of conduct. Secondly, and more important to due process, the District Court disrupted the plea bargaining process by actively participating in the negotiations. Such actions by a trial court have been condemned in numerous cases. See, Annot., 10 ALR4th 689, et seq. Lastly, even if the enhancement statute is applied to this case, the evidence does not support the District Court’s conclusion that defendant was not acting under sufficient duress to meet the statutory exceptions of the enhancement statute. See, section 46-18-222, MCA.
The controlling language here is contained in the enhancement statute which provides in part that a person is subject to its application if he “. . .knowingly displayed, brandished, or otherwise used a firearm. . .”
This Court has held that when the legislature enacted the new criminal code in 1973, it substituted the words “purposely” and “knowingly” for the words “feloniously” and “intentionally.” State v. Klein (1976), 169 Mont. 350, 547 P.2d 75. By definition, then, statutes containing the word “knowingly” contain a specific intent. Also by definition, acting “knowingly” is not acting accidently. State v. Seitzinger (1979), 180 Mont. 136, 589 P.2d 655.
In contrast, “negligently,” by definition, refers to the commission of an act without regard to the actor’s intent or knowledge. See definition in section 45-2-101(37), MCA.
Nevertheless, at the sentencing hearing the intent of defendant was repeatedly brought into evidence over the objection of defense counsel. The state with the encouragement of the District Court in effect retried defendant for deliberate homicide. See comment, supra.
The District Court rationalized the use of such evidence by trying to distinguish the knowing use of the firearm from the crime committed. This cannot be done simply because it subjects the defendant to proof of a specific intent where admittedly no specific intent is present. In essence, negligent homicide has been redefined as an act committed “knowingly,” depriving defendant of his right to equal pro *119 tection and due process and creating a vague statute.
As the Washington Supreme Court stated:
“. . .Statutes which define crimes must be strictly construed according to the plain meaning of their words to assure that citizens have adequate notice of the terms of the law, as required by due process. ‘Men of common intelligence cannot be required to guess at the meaning of the enactment.’ Winters v. New York, 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed.2d 840 (1947); Seattle v. Pullman, 82 Wash.2d 794, 797, 514 P.2d 1059 (1973). The word ‘knowledge’ has an ordinary and accepted meaning. A statutory redefinition of knowledge to mean negligent ignorance would completely contradict the accepted meaning. . .” State v. Shipp (1980), 93 Wash. 2d 510, 610 P.2d 1322, 1326.
Moreover, the District Court interpreted the enhancement statute in such a way that a penalty is imposed for acts and an intent different from those in the underlying offense. In effect, the District Court has created a separate offense out of the enhancement statute, i.e., knowingly using a firearm or other destructive device. The defendant was then tried for this offense at the sentencing hearing.
We stated in State v. Davison (1980), Mont., 614 P.2d 489, 37 St.Rep. 1135, that the enhancement statute neither creates nor penalizes a defendant with a separate offense. The District Court’s interpretation of the enhancement statute, here, is not reconcilable with the holding in Davison. If the enhancement statute is to be used, as its name suggests, to “enhance” the underlying offense, it cannot impose an element of intent separate from the underlying offense.
As well as misinterpreting the enhancement statute, the District Court obstructed the purpose of the defendant’s plea bargain by imposing a five-year sentence on top of the ten-year sentence for which defendant originally bargained. Such action by the District Court is in contravention to standards set by the American Bar Association Standards for Criminal Justice which limits the trial judge to the role *120 of an impassive moderator. ABA Standards for Criminal Justice 14-3.3 (2 ed. 1980). When a plea is influenced by the actions of a judge it cannot be said to be voluntary. State v. Cross (1977), 270 S.C. 44, 240 S.E.2d 514. Plea negotiations should be between adversaries, and the trial judge should not participate for either side since it is his responsibility to determine unbiasedly the voluntariness of the plea.
Here, the District Court broke the plea bargain agreement in its bastardization of the enhancement statute. Defendant originally bargained up to the ten-year maximum sentence for negligent homicide. Only through active participation by the District Court was this maximum sentence increased by five years.
Even if the enhancement statute could be said to apply to this case and if the District Court’s participation in the plea negotiations could be considered proper, the District Court nevertheless abused its discretion by concluding that defendant did not come under the statutory exceptions to the enhancement statute. The record simply does not support the conclusion that defendant was not acting under unusual and substantial duress. See, State v. Fish and Hubbard, supra.
As related in the facts acknowledged by this Court on appeal, the owner of the rifle, Miller, shot two times at defendant moments before defendant himself came into possession of the rifle. Miller had shoved the rifle in defendant’s face, threatening to blow his head off. Defendant wrested the rifle away from Miller. Defendant then walked over to his friend who had just been fatally struck in the neck with shrapnel from Miller’s prior shots. Miller began to run away and defendant shot at him to prevent his escape. Clearly, this evidence of the situation preponderates against the District Court’s conclusion that defendant was not under substantial duress at the time of the shooting. The District Court, therefore, abused its discretion. The statutory exception found in section 46-18-222(3), MCA, should apply, and the extra five-year sentence should be set aside.
*121 I have made some broad statements and am mindful of my own frailties. However, it has been my purpose to deal with the facts in an impersonal and objective manner. I have perhaps been too critical of the lower court personnel. I would like it understood that I do not speak in terms of conscious partiality or prejudgment, as no judge worthy of his office would knowingly permit any cloud of prejudice to darken his understanding or influence his decision.